**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Joseph Raymond GOMEZ, Defendant-Appellant.**

**No. 80SA494.**

Supreme Court of Colorado, En Banc.

Aug. 10, 1981.

Rehearing Denied Aug. 31, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Susan P. Mele-Sernovitz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Eugene Deikman, Denver, for defendant-appellant.

QUINN, Justice.

Joseph Raymond Gomez (defendant) appeals his conviction for possession of a narcotic drug for sale in violation of section 12–22–322(1)(a), C.R.S.1973 (1978 Repl. Vol. 5).[1] He asserts several grounds for reversal including the trial court's refusal to suppress evidence seized in the course of a warrantless entry into his motel room, various evidentiary rulings made by the court during the trial, the court's instruction on the statutory definition of sale and its refusal to give certain tendered instructions to the jury, and the alleged insufficiency of the evidence to support his conviction. We affirm the conviction.

## I. The District Court Proceedings

The information charged that the defendant on November 11, 1977, unlawfully possessed for sale a narcotic drug, heroin, with the specific intent to induce or aid another person to unlawfully use or possess the heroin. The charge arose out of the defendant's arrest in the early morning hours of November 11, 1977, at the Sunset Village Motel in Lakewood, Colorado.

During the month preceding the defendant's arrest the management of the motel had experienced a series of thefts from the motel units. The manager noticed that four persons registered at the motel on several occasions under different names and the thefts usually occurred during their stay there. Agent Shilaos of the Lakewood Department of Public Safety advised the manager to notify him if any of the four persons registered at the motel again. During the evening of November 10, 1977, the defendant's companion, Joseph Herrera, who was one of the four suspects, registered at the motel and occupied unit 17 with the defendant. Upon being notified of this by the manager, Agents Shilaos and Shaw went to the motel to talk to Herrera about the thefts. Shilaos was dressed in plain clothes and Shaw was in uniform.

Unit 17 is a rectangular bedroom with a shower and toilet. It is approximately twenty-four feet in length from east to west and twelve feet deep. The front door opens on the north side to a sidewalk or entrance way which extends along the entire front of the unit. There are two large casement windows in the northwest corner of the unit, both of which are located at normal eye level. One window faces north and directly overlooks the sidewalk and the other faces west and overlooks the sidewalk at a slight angle. The windows had curtains but the curtains on the window facing north had a gap or aperture of 1½ to 2 inches. Approximately four feet inside the unit, directly south of the curtain gap, was

1. This appeal was originally filed in the court of appeals but was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110, C.R.S.1973, because of the defendant's constitutional claim regarding section 12–22–301(25), C.R.S.1973 (1978 Repl. Vol. 5), and a jury instruction based thereon.

a makeup table with a five foot mirror on it.

The officers parked their vehicles near unit 17 in a common parking area. In walking from his vehicle to the sidewalk area, Shilaos noticed a person, later identified as Herrera, looking out the door window and closely watching him. On reaching the sidewalk directly adjoining the unit, Shilaos noticed the gap or break in the curtains covering the window facing north. The room inside was well illuminated. From the sidewalk area he looked through this gap and observed a man, later identified as the defendant, seated at the makeup table in front of the large mirror inside the unit. Shilaos saw the defendant moving a pile of brownish granular material toward a larger pile of white powder and concluded that he was observing the cutting of heroin with milk sugar. He told Agent Shaw of his observations and immediately radioed for assistance.

Shilaos then ran to the front door of the unit, identified himself as a police officer, and demanded entry. Herrera held the door shut but Shilaos was able to push it open. As the officers entered the room the defendant was exiting the bathroom adjoining the bedroom and the toilet was flushing. Shilaos ran to the bathroom and saw a clear plastic bag containing the same brown granular material going down the toilet. He unsuccessfully attempted to retrieve the bag from the toilet. A brown powdery material was visible around the porcelain rim of the toilet and on some utensils in the bedroom.[2] On the makeup table in the bedroom were various implements associated with the dilution and use of heroin, including a bag of balloons, small measuring spoons, plastic lids, cotton swabs, a syringe, and an empty container of lactose.

The defendant and Herrera were placed under arrest and searched. Cash in the amount of $275 was recovered from the pants pocket of the defendant. With their hands and through the use of an adhesive tape, the officers gathered up 160 milligrams of material from the area under and around the makeup table. They also seized the narcotics paraphernalia plainly visible on the makeup table. The trial court denied the defendant's pretrial motion to suppress the evidence recovered from the motel unit, concluding that Agent Shilaos' initial observations of the defendant in the motel room were lawful and established probable cause and exigent circumstances to enter the motel unit for the purpose of arresting the defendant and seizing the evidence therein.

During the trial Officer Shilaos described the circumstances of the defendant's arrest and the removal and preservation of the brown granules from the motel room. The granules were placed in a box and later were transmitted to the Colorado Bureau of Investigation (CBI) for chemical tests and then returned to the Lakewood Department of Public Safety. CBI Agent Netwall, whom the trial court received as an expert witness in analytical chemistry, testified that when he opened the box, there were no loose granules inside but, rather, all granules were sticking to the adhesive tape. The People offered into evidence the box and its contents, People's Exhibit 10, to which the defendant objected on the ground that an unbroken chain of custody had not been sufficiently established. The court overruled the objection and admitted the exhibit.

Agent Netwall described various chemical tests performed on the residue recovered

---

**2.** Brown powdery material was visible on some plastic lids, a glass jar, three 25¢ pieces and a spoon recovered from the makeup table. The trial court suppressed the brown material because it was destroyed during prosecutorial testing for heroin, and thus the defendant's expert was prevented from testing and challenging the prosecution's evidence that the material was heroin. We affirmed the suppression ruling in *People v. Gomez*, 198 Colo. 105,

596 P.2d 1192 (1979). At trial the prosecution and defense stipulated that, although the prosecution could not elicit testimony about the test results, it could offer into evidence photographs taken of the objects and elicit testimony that there was a brown powdery substance on the objects similar in appearance to the brown material observed by Agent Shilaos through the gap in the curtain.

from the motel and testified that in his opinion the 160 milligrams of material contained 21.6 milligrams of heroin. On cross-examination of Agent Netwall, defense counsel elicited testimony that 21.6 milligrams of heroin were the equivalent of 0.0007 of an ounce. On redirect examination Netwall testified that this amount represented a usable quantity of heroin and that other drugs, such as codeine, were used in amounts ranging from 2 to 15 milligrams. The defendant unsuccessfully objected to Netwall's redirect testimony as beyond the qualifications of the witness and outside the scope of proper redirect examination.

During the prosecution's case in chief the defendant unsuccessfully moved to strike the testimony of three prosecution witnesses on the grounds that they violated a sequestration order. Agent Knott, a member of the Lakewood Police Department, testified to the general method of illegal distribution and use of heroin. During a recess it was brought to the attention of the court that he had talked to Agent Shilaos about the condition in which Shilaos found the drug paraphernalia on the night of the arrest. The defendant moved for a mistrial and alternatively to strike Knott's testimony and that of Shilaos. The prosecution argued that it intended to proffer this information to Agent Knott in the course of further direct examination by asking him a hypothetical question and, therefore, the defendant suffered no prejudice by the technical violation of the sequestration order. The trial court denied the defendant's motion for a mistrial but ordered that there be no further direct examination of Agent Knott. It was also brought to the attention of the trial court that a conversation between the District Attorney and Agent Netwall about the percentages of active ingredients in certain drugs had been inadvertently overheard by Agent Knott. The defendant moved to strike the testimony of both Netwall and Knott. The trial court denied the motion to strike, finding that Knott's overhearing the conversation was inadvertent.

At the conclusion of the People's case the defendant moved unsuccessfully for a judgment of acquittal. Over the defendant's objection the court included in the instructions the statutory definition of "sale" as including "barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant, or employee." Section 12–22–301(25), C.R.S.1973 (1978 Repl. Vol. 5). The defendant tendered seven jury instructions, all of which were rejected. Two tendered instructions concerned the legal sufficiency and significance of evidence of useless traces of narcotics. Three of the defendant's instructions related to the evidentiary significance of such matters as the recent past possession or use of narcotics, the mere presence of the defendant on premises where narcotics were found and the defendant's joint possession of the motel room with another. The defendant's other two instructions dealt with opinion testimony and the prosecution's burden to prove that the amount of heroin actually recovered was usable.

The court submitted to the jury the crimes of possession of a narcotic drug, heroin, for sale with the intent to induce or aid another to use or possess the heroin, section 12–22–322(1)(a), C.R.S.1973 (1978 Repl. Vol. 5), and the lesser offense of possession of a narcotic drug, section 12–22–302, C.R.S.1973 (1978 Repl. Vol. 5). The jury returned a verdict of guilty to the principal charge, resulting in a sentence to a term of seven to eight years, and this appeal followed.

## II. The Seizure of Evidence

We first consider the defendant's claim that the entry into the motel unit and the seizure of contraband and evidence therein constituted an unreasonable search and seizure in violation of the United States and Colorado Constitutions. *U.S.Const.* Amend. IV; *Colo.Const.* Art. II, Sec. 7. In challenging the trial court's ruling denying the motion to suppress, the defendant argues three alternative propositions: (1) Agent Shilaos' observations of the defendant through the curtains constituted a warrant-

less search and therefore they were invalid; (2) even if these observations were not a search, exigent circumstances did not exist for the warrantless entry into the motel room; and (3) even if exigent circumstances did exist, the subsequent warrantless search and seizure inside the motel unit were unconstitutional. We find the defendant's arguments unpersuasive.

#### A.

■ In order for the exclusionary rule to apply, there first must be a determination that the challenged governmental conduct constitutes a search. Generally a search involves "some exploratory investigation, or an invasion and quest, a looking for or seeking out," and "implies a prying into hidden places for that which is concealed . . . ." 1 *W. LaFave, Search and Seizure* § 2.1 at 222 (1978). *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), provides the starting point for determining whether the officer's initial observations of the defendant in the motel room constituted "a search" in the constitutional sense. In *Katz* the United States Supreme Court considered whether the governmental use of electronic equipment to overhear and record telephone conversations in a public telephone booth constituted a search and seizure. In rejecting traditional notions of trespass and constitutionally protected areas, the Court stated that "the Fourth Amendment protects people, not places," *id.* at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582, and "the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." *Id.* at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583. The Court's determination of the threshold question of search turned on whether the governmental activities "violated the privacy upon which [Katz] justifiably relied while using the phone booth . . . ." *Id.* at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583. While the *Katz* formulation of the scope of Fourth Amendment protections generally would consider "a man's home . . . for most purposes [as] a place where he expects privacy," nevertheless "objects, activities, or statements that

he exposes to the 'plain view' of outsiders [would not be] 'protected' because no intention to keep them to himself has been exhibited." *Id.* at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J. concurring). The appropriate question in this case thus becomes whether the defendant exhibited a reasonable expectation of privacy which was violated by an unjustified governmental intrusion into that privacy. *See, e. g., People v. Becker,* 188 Colo. 160, 533 P.2d 494 (1975).

■ The evidence at the suppression hearing does not yield the slightest suggestion that the police or anyone acting under their direction prearranged the curtains for the specific purpose of creating visual access to the interior of the motel unit. With no evidence of such governmental action, we do not believe the resolution of the search issue should depend on such fortuities as whether the gap was caused by a defective curtain rod, the occupant's inadvertent arrangement of the curtains, or the normal hang of the curtains. *See, e. g., People v. Berutko,* 71 Cal.2d 84, 77 Cal.Rptr. 217, 453 P.2d 721 (1969). Here the evidence is undisputed that the observations were made by looking through a gap in the curtains from a sidewalk area used as a common entrance way to the defendant's motel unit. Under such circumstances the defendant cannot claim a reasonable expectation of privacy from the intrusive glance of a passer-by:

"A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner [or occupant] must reasonably expect him to observe all that is visible. In substance the owner [or occupant] has invited the public and officer to look and to see. But, by the same reasoning, the officer who intrudes upon property not so open to the public enjoys no such prerogatives." *Lorenzana v. Superi-*

*or Court of Los Angeles County,* 9 Cal.3d 626, 629, 511 P.2d 33, 35, 108 Cal.Rptr. 585, 587 (1973).

Accordingly, we hold that where a police officer, while walking on a sidewalk used as a common entrance way to a motel unit, observes through a visual aperture in the window curtains the actions of the defendant occurring inside the motel unit, the observations of the officer do not constitute a "search" in the constitutional sense of that term and do not violate the Fourth Amendment to the United States Constitution or Article II, Section 7 of the Colorado Constitution.

### B.

■ We proceed now to the question whether there was an exigency justifying the warrantless entry into the motel unit. The doctrine of exigent circumstances is limited to "those situations where, due to an emergency, the compelling need for immediate police action militates against the strict adherence to the warrant requirement." *McCall v. People,* Colo., 623 P.2d 397, 402 (1981).

"Exigent circumstances justifying a warrantless arrest generally have been limited to those situations involving a *bona fide* pursuit of a fleeing suspect, *e. g., Warden v. Hayden* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)]; *United States v. Scott,* 520 F.2d 697 (9th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976), or the risk of immediate destruction of evidence, *e. g., United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *People v. Williams,* Colo., 613 P.2d 879 (1980), or a colorable claim of emergency threatening the life or safety of another, *e. g., People v. Amato,* 193 Colo. 57, 562 P.2d 422 (1977). The scope of the doctrine, however, must be 'strictly circumscribed by the exigencies which justify its initiation,' *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978), quoting *Terry v. Ohio,* 392 U.S. [1], 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968), and the burden is on the prosecution to establish that those

exigencies render the warrantless entry truly imperative. *E. g., Mincey v. Arizona, supra; Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Warden v. Hayden, supra; Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)." *Id.* at ——, 623 P.2d at 402.

■ The trial court's finding of exigent circumstances is adequately supported by the record. Agent Shilaos was being watched from the motel unit by the defendant's companion, Joseph Herrera, and Agent Shaw, who was in uniform, was readily visible from Herrera's point of observation. It was apparent to Herrera and the defendant that the police were in the immediate vicinity of their motel room. When Shilaos observed the defendant's illegal activity he was confronted with the urgent need to prevent the immediate destruction of the contraband. Time was of the essence and only an immediate entry into the motel unit could prevent the likely disposal of the contraband by the occupants. Even with instant entry, most of the contraband had already been flushed down the toilet.

### C.

■ We next consider whether the officers legitimately seized the paraphernalia on the makeup table in the bedroom and the particles of granular material on the carpet under and around the makeup table, as well as the powdery material around the toilet rim in the bathroom.

"The scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685, 693 (1969), quoting *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968). In this case the possible destruction of the very evidence seized was the basis for the initial entry into the motel unit.

Furthermore, the officers had probable cause to arrest the defendant inside the motel unit and that arrest furnished ample

justification for the seizure of the granular material and the narcotics paraphernalia. It is permissible for officers to search "the area 'within [the defendant's] immediate control'—construing that phrase to mean the area from within which he might gain possession of ... destructible evidence." *Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694; *see also New York v. Belton,* —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The small particles taken from the floor under and around the makeup table and from other areas in the unit could readily have been destroyed or lost if they were not seized on the spot. The other objects seized were connected with the crime and were within reach of the defendant and Herrera. Accordingly, the trial court did not err in denying the defendant's motion to suppress the challenged evidence.

### III. *The Chain of Custody*

■ The defendant contends that the prosecution failed to establish an unbroken chain of custody for People's Exhibit 10, the box containing the particles of heroin lifted from the carpeting in the motel room. The defendant's contention centers on a claimed discrepancy between Agent Shilaos' testimony that he picked up some loose particles by hand and placed them in the box and Agent Netwall's testimony that all the granules in the box adhered to the adhesive tape.

The defendant's assertion notwithstanding, it is by no means clear that loose particles, unattached to the adhesive tape, ever found their way into the box. Agent Shilaos testified that "I simply started picking up what I could with my fingers and placing them in a box and we were having difficulty in doing this ... so we tried using a piece of large scotch tape or transparent tape and press[ed] that against the carpet and pick[ed] some debris up that way ... and we just placed that in the box." But more importantly, the prosecution as proponent of the exhibit clearly established the chain of custody for the 21.6 milligrams of heroin recovered from the carpet, and the defendant presented no evidence indica-

tive of tampering. "Where it is only speculation that there was tampering, it is proper to admit the evidence and let the jury determine its weight." *People v. Smith,* 182 Colo. 228, 232, 512 P.2d 269, 271 (1973); *accord, People v. Fite,* Colo., 627 P.2d 761 (1981); *People v. Atencio,* 193 Colo. 184, 565 P.2d 921 (1977). We conclude that the trial court properly admitted the exhibit.

### IV. *Agent Netwall's Redirect Examination*

■ The defendant also challenges the trial court's ruling permitting Agent Netwall on redirect examination to testify that the 21.6 milligrams or 0.0007 ounces of heroin constituted a usable amount. The defendant argues that such testimony was beyond the qualifications of the witness and outside the scope of proper redirect examination. We find no error in the trial court's ruling.

Without objection from the defendant the court permitted Agent Netwall to testify as an expert witness in analytical chemistry. Whether opinion testimony is within a witness' expertise generally is a matter addressed to the sound discretion of the court and no abuse of discretion has been shown here. *See, e. g., People v. Jiminez,* 187 Colo. 97, 528 P.2d 913 (1974); *Scott v. People,* 166 Colo. 432, 444 P.2d 388 (1968); *Starkey v. Bryan,* 166 Colo. 43, 441 P.2d 314 (1968).

The defendant during his cross-examination of this witness inferentially injected into the trial the arguable issue of insufficient proof of guilty knowledge and/or possession due to the very minute amount of heroin recovered. Under these circumstances the trial court acted within its discretion in permitting the prosecution to question the witness about this matter "in an effort to dispel any unfavorable innuendo" created by the witness' testimony on cross-examination. *People v. Taggart,* Colo., 621 P.2d 1375, 1386 (1981). *See also, e. g., People v. Pickett,* 194 Colo. 178, 571 P.2d 1078 (1977); *Mathis v. People,* 167 Colo. 504, 448 P.2d 633 (1968); *Abeyta v. People,* 156 Colo. 440, 400 P.2d 431 (1965).

## V. The Sequestration Order

We next consider whether the trial court erred in failing to grant a mistrial or, in the alternative, to strike the testimony of three prosecution witnesses because of their violation of the court's sequestration order.

The trial court specifically found that although Agents Shilaos and Knott violated the sequestration order by discussing prospective testimony regarding heroin paraphernalia, that violation did not taint any prior or prospective testimony of these witnesses. The court, nevertheless, imposed the sanction of disallowing any further direct examination of Knott. Matters relating to the sequestration of witnesses and violations of sequestration orders traditionally have remained within the trial court's sound discretion. E. g., Hampton v. People, 171 Colo. 153, 465 P.2d 394 (1970); Gomez v. People, 155 Colo. 507, 395 P.2d 462 (1964). We fail to perceive any abuse of discretion or, for that matter, any prejudice to the defendant by virtue of the limited sanction imposed by the trial court.

With respect to Agent Knott's hearing a conversation between the deputy district attorney and Agent Netwall about the percentages of active ingredients in drugs, the court determined that this overhearing was inadvertent and no sanction would be appropriate. In this instance also we find no abuse of discretion.

## VI. The Sufficiency of Evidence

Contrary to the defendant's contention, we find the evidence sufficient to sustain his conviction. To withstand a motion for a judgment of acquittal the prosecution has the burden of presenting evidence which, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of a crime beyond a reasonable doubt. E. g., People v. Bennett, 183 Colo. 125, 515 P.2d 466 (1973). "The substantial evidence test affords the same status to circumstantial evidence as to direct evidence, and an exclusively circumstantial case need not exclude every reasonable hypothesis other than guilt to withstand a motion for a judgment of acquittal." People v. Elkhatib, Colo., 632 P.2d 275, 279 (1981).

This is not a case where the prosecution's evidence consists only of the discovery of a few particles of heroin, sprinkled on a carpet and a toilet rim in the defendant's motel unit, with no additional evidence establishing his knowledge of its location and its character as a narcotic. See, e. g., People v. Theel, 180 Colo. 348, 505 P.2d 964 (1973); People v. Larsen, 180 Colo. 140, 503 P.2d 343 (1972); Ramsey v. People, 179 Colo. 172, 498 P.2d 1148 (1972). Although the amount of heroin admitted at trial was miniscule, there was ample testimonial and real evidence indicating that the defendant knowingly possessed a large amount of heroin but succeeded in preventing its seizure by flushing it away. The jury was not required to confine itself solely to the residue but rather could consider all the evidence, including the testimony depicting the defendant's "cutting" a far greater quantity of heroin, his use of paraphernalia for this purpose, his destruction of most of the heroin moments before his arrest, and his possession of $275 in currency at the time of his arrest. When the evidence is appropriately viewed, it is sufficient to permit a reasonable person to conclude beyond a reasonable doubt that the substance in the defendant's possession was heroin, that the defendant knew the heroin was in his possession, and that he possessed the heroin for the purpose of sale with the intent to induce or aid another to unlawfully use or possess the heroin. The trial court did not err in denying the defendant's motion for a judgment of acquittal.

## VII. Jury Instructions

The defendant argues that the court improperly instructed the jury that a sale "means barter, exchange, or gift, or offer therefor ...." Although he asserts that such definition violates due process of law, we find nothing in the definition which is unconstitutionally vague. It was within the legislative prerogative to include the aforementioned categories within the statu-

tory definition of sale in section 12–22–301(25), C.R.S.1973 (1978 Repl. Vol. 5). *See People v. Edwards*, 198 Colo. 52, 598 P.2d 126 (1979). The court's instruction merely repeated this statutory definition.

 We proceed to consider the defendant's claims regarding the trial court's refusal of seven tendered jury instructions. One tendered instruction stated that "evidence of useless traces . . . of narcotic substances does not constitute sufficient evidence to sustain a conviction . . . ." Another instruction essentially repeated this same principle by stating that possession of useless traces likewise is insufficient to sustain a conviction. Although the court rejected these instructions in the form tendered, it did instruct the jury that "evidence of possession of useless traces or residues of narcotic substances, in and of itself, does not constitute sufficient evidence to sustain a conviction . . . ." In view of the trial evidence from which the jury reasonably could conclude that the defendant knowingly possessed an amount of heroin far in excess of mere traces or residue, the court's instruction correctly stated the principle of law applicable to this case and the defendant's tendered instructions were properly refused. *See, e. g., Romero v. People*, 181 Colo. 305, 509 P.2d 301 (1973).

 The defendant also tendered instructions dealing with the evidentiary significance of recent past possession or use of narcotics, his mere presence on premises where narcotics are found, and his joint possession of the motel room with another. The trial court did not err in refusing these instructions. They contain statements of law which are either incorrect or inapplicable to the facts of the case. The instructions actually given correctly outlined and defined the essential elements of the offenses submitted to the jury and included definitions of possession, knowledge and specific intent, and a clear statement of the prosecution's burden to prove guilt beyond a reasonable doubt on all essential elements of a crime.

One of the defendant's tendered instructions dealt with opinion testimony. The court properly instructed the jury on the opinion testimony of expert witnesses, *Colo. J.I. (Crim.)* 4:10, and the giving of the defendant's tendered instruction on this matter would have been improper.

The last tendered instruction stated that the prosecution had the burden to prove beyond a reasonable doubt that the residue of heroin recovered from the motel unit was usable for consumption or sale. This instruction was misleading and therefore properly refused. The prosecution's burden was to establish that the defendant knowingly possessed a usable amount of heroin for sale with the specific intent required by section 12–22–322(1)(a), C.R.S. 1973 (1978 Repl. Vol. 5). In determining whether the prosecution met its burden of proof, the jury was not required to confine itself to the residue itself but, rather, properly could consider all the evidence in the case.

The judgment is affirmed.

HODGES, C. J., does not participate.