637 P.2d 392 (1981)
The PEOPLE of the State of Colorado, Plaintiff-Appellant
v.
Lloyd Allen DONALD, Defendant-Appellee.
No. 81SA459.
Supreme Court of Colorado, En Banc.
December 7, 1981.
Stuart A. VanMeveren, Dist. Atty., Stephen J. Roy, Deputy Dist. Atty., Fort Collins, for plaintiff-appellant.
Paul E. Valentine, Fort Collins, for defendant-appellee.
QUINN, Justice.
Pursuant to C.A.R. 4.1 the People appeal from a ruling suppressing evidence seized *393 after a warrantless entry into the defendant's apartment under arguably exigent circumstances. Because the trial court misapprehended the legal standards applicable to the suppression issues, we reverse and remand with directions.
The defendant was charged by direct information with possession of a Schedule I controlled substance, psilocybin, on August 21, 1981. Colo.Sess.Laws 1981, ch. 128, XX-XX-XXX(2)(a) and XX-XX-XXX at 714-17 and 730. He filed a motion to suppress evidence and the court conducted a hearing on the motion. The evidence at the suppression hearing consisted only of the direct testimony of Fort Collins Police Officer Ernie Tellez who had arrested the defendant for the offense charged. Upon conclusion of the prosecutor's direct examination of the officer the court stated that it was ready to rule and granted the defendant's motion to suppress.
Officer Tellez' testimony at the suppression hearing established the following sequence of events during the evening of August 21, 1981. A woman reported to the Fort Collins Police Department that she had been chased by an unidentified man whom she believed had come from the apartment below hers. The woman lived in the upstairs unit of a duplex apartment at 2108 Applewood Drive in Fort Collins. Officer Tellez was dispatched to her home to investigate the complaint. After obtaining a description of the suspect the officer walked down an outside staircase to the lower apartment which was leased and occupied by the defendant. Looking through a living room window in the defendant's apartment, the officer observed six or seven persons inside the living room, none of whom matched the description of the man who had been chasing the woman. The officer, who was in uniform, knocked on the living room window and the occupants looked towards the window. At this point one of the occupants, whom the officer believed probably was the defendant, grabbed what appeared to be a "baggie of marijuana" and "a smoking pipe" and threw them under a coffee table. Officer Tellez demanded immediate entry into the apartment and one of the occupants opened the door. Upon entry the officer immediately retrieved the baggie and pipe from the living room.
Officer Tellez then walked into the kitchen to see if anyone else was inside the apartment. He returned to the living room where he observed lying under a chair a plastic bag of mushrooms which he believed contained psilocybin. He seized the plastic bag and escorted the defendant into the kitchen, where he requested permission to search the entire apartment for the man who had been chasing the woman and for additional drugs. While talking to the defendant in the kitchen he observed two jars of mushrooms on top of the refrigerator. According to the officer's testimony the defendant consented to the search of the apartment. A search of the bedroom uncovered a laboratory for the manufacture of psilocybin, including 41 jars of cultivated mushrooms and various books dealing with their cultivation, all of which were seized.
When the officer completed his direct testimony the court stated to defense counsel that it was unnecessary to cross-examine the officer and then suppressed all evidence seized from the apartment, ruling as follows:
"An officer has the right to go to the door, identify himself as an officer, ask about the people there, if anybody knows about it, interrogate anybody; but to go to a window and look in and see some smoking of pot by a bunch of young people, knock on the window, and run in when he sees the pot put away, that is a terrific invasion of privacy. He should go to the door."
* * * * * *
"That's the court's ruling. The motion to suppress is granted."
The court's ruling was based on the incorrect assumption that the officer's observations *394 from an area outside the living room window was per se an unconstitutional search. In People v. Gomez, Colo., 632 P.2d 586 (1981), we considered whether the occupant of a motel unit could claim a reasonable expectation of privacy in activities conducted inside the unit but observed by a police officer looking through a gap in the curtains from a sidewalk area used as a common entrance way to the motel unit. Relying on the principle that "[a] sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectation of privacy in regard to observations made there," Lorenzana v. Superior Court of Los Angeles County, 9 Cal.3d 626, 629, 511 P.2d 33, 35, 108 Cal.Rptr. 585, 587 (1973), we held that "where a police officer, while walking on the sidewalk used as a common entrance way to a motel unit, observes through a visual aperture in the window curtains the actions of the defendant occurring inside the motel unit, the observations of the officer do not constitute a `search' in the constitutional sense of that term and do not violate the Fourth Amendment to the United States Constitution or Article II, Section 7 of the Colorado Constitution." People v. Gomez, supra, Colo., 632 P.2d at 592.
Our decision in Gomez is applicable here. If Officer Tellez observed illegal activity inside the defendant's apartment by looking through the living room window from a common entrance or similar passageway, those observations would not constitute a search. Although we assume the court's remark about an officer looking inside a window and seeing "some smoking of pot by a bunch of young people" was intended as a finding of fact, it was made in peremptory fashion before the parties had an opportunity to fully develop the evidence. The record does not establish with certainty that the prosecution had completed its evidence at the suppression hearing. Moreover, even if the prosecution had no other witnesses, defense counsel had no opportunity to cross-examine the officer or to present any evidence in contravention of his testimony on direct examination. Under these circumstances it would be inappropriate merely to reverse the suppression ruling without affording the parties an adequate evidentiary hearing on all issues raised by the defendant's motion to suppress.
The court, having suppressed the evidence solely on the basis of the illegality of the officer's initial observations, never addressed the issue of exigent circumstances as a justification for the warrantless entry into the apartment. If the officer's initial observations were constitutionally permissible the prosecution would bear the burden of establishing that the warrantless entry was necessary to prevent the immediate destruction of evidence or otherwise was justified under the exigent circumstances doctrine. E.g., United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); People v. Gomez, supra; People v. Williams, Colo., 613 P.2d 879 (1980). Additionally, the court did not resolve the issue relating to the constitutional propriety of the defendant's consent to search his entire apartment. If the officer's entry into the apartment was lawful, the consent to search still must satisfy constitutional standards of voluntarinessthat is, it must be "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1974); see also People v. Elkhatib, Colo., 632 P.2d 275 (1981). If, however, the officer's entry into the apartment was unlawful, the consent to search likely would be constitutionally infirm as a product of the illegal entry. E.g., Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); People v. Lowe, Colo., 616 P.2d 118 (1981).
The suppression ruling is reversed and the cause is remanded to the district court with directions to conduct a new evidentiary hearing on the defendant's motion to suppress and to determine the motion in *395 accordance with the legal principles appropriate thereto.