The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

William E. SCARLETT, Defendant–Appellant.

No. 96CA2221.

Colorado Court of Appeals, Div. III.

Sept. 17, 1998.

Rehearing Denied Oct. 22, 1998.

Certiorari Denied Sept. 7, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Jane G. Ebisch, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Claudia Brett Goldin, Deputy State Public Defender, Denver, Lisa Dixon, Deputy State Public Defender, Colorado, for Defendant–Appellant.

Opinion by Judge PLANK.

Defendant, William E. Scarlett, appeals the judgment of conviction entered upon a jury verdict finding him guilty of vehicular homicide. We affirm.

While driving his pickup truck, defendant saw an obstacle ahead in the road. After his vehicle skidded to a stop, defendant realized that he had struck and killed a child who had been riding a bicycle.

A subsequent police investigation indicated that defendant was speeding and that his blood alcohol level following the collision was between 0.020 and 0.046 grams of alcohol per 100 milliliters of blood. Defendant was charged with vehicular homicide involving reckless driving. A charge of vehicular homicide involving alcohol was dismissed upon motion of the prosecution. The conviction at issue in this appeal resulted.

## I.

Defendant first contends that his conviction was obtained in violation of his right to due process because the police were grossly negligent in permitting additional damage to occur to his truck while it was impounded and that the trial court abused its discretion by imposing a meaningless sanction on the prosecution. We disagree.

Police measured the skid marks left by defendant's truck and, using that information as well as general road conditions and other factors, determined that defendant had been traveling 54 miles per hour when the skid began. The posted speed limit was 25 miles per hour. Defendant sought to have an expert evaluate the damage to the truck to establish independently the truck's speed at the time of the collision.

Defendant's truck was stored at the police impound lot during the pendency of this action. The practice at the impound lot was to leave the key in the ignition of the vehicles stored there. Thieves used defendant's truck to ram the impound lot gate to facilitate their theft of another vehicle. The additional damage to the front of defendant's truck prevented the expert from being able to perform an independent evaluation of the truck's speed at the time of impact.

The trial court found that the police had "failed in their responsibility [to preserve evidence] to the prejudice of defendant." As a sanction for that failure, the trial court barred the prosecution from admitting any accident reconstruction evidence based on evidence of damage to the truck but ruled that the "skid-to-stop" evidence would be admitted.

Defendant argues that the sanction was, in effect, no sanction at all, because the prosecution had no such accident reconstruction evidence to offer but, more importantly, that police "bad faith" conduct prevented defendant from being able to present potentially exculpatory evidence.

■ It is a violation of the defendant's due process rights when the state fails in bad faith to preserve evidence that might have exonerated him or her. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). However, as stated in *People v. Wyman*, 788 P.2d 1278, 1279–80 (Colo.1990):

> The due process clause of the fourteenth amendment does not invariably require a state to preserve evidence ... "of which no more can be said than it could have been subjected to tests." When dealing with such evidence, unless an accused can show bad faith on the part of the police, failure

to preserve useful evidence does not constitute a due process deviation.... The constitutional duty imposed upon the state to preserve evidence is limited to that evidence that is "constitutionally material." For evidence to be constitutionally material, the evidence (1) must have an exculpatory value that was apparent before the evidence was lost or destroyed; and (2) the defendant must be unable to obtain comparable evidence through other available means.

Therefore, defendant here must show either that the police acted in bad faith by failing to prevent additional damage to the truck or that the damaged truck had apparent exculpatory value before it was further damaged, and that there was no other comparable evidence available.

Citing *People v. Baca*, 193 Colo. 9, 562 P.2d 411 (1977), defendant asserts that the police conduct, particularly the failure to prevent additional break-ins at the impound lot despite knowledge of prior incidents, was in bad faith because it amounted to gross negligence. However, *Baca* holds only that gross negligence may be, under some circumstances, tantamount to bad faith or overreaching, not that such a finding is mandatory.

■ Here, defendant does not allege that the police willfully destroyed evidence, and the trial court determined only that the police were negligent in the preservation of defendant's truck. Because there is ample support in the record for the trial court's determination, we will not overturn it on appeal.

Alternatively, the evidence must have had apparent exculpatory value before the loss or destruction occurred. But, defendant does not assert that the nature of the damage to his truck from the collision was apparently exculpatory, nor does our review of the record reveal anything to support such a contention. Speculative assertions regarding the possible exculpatory effect had the evidence been available for testing are not sufficient to meet this burden. *People v. Wyman, supra.*

Finally, the evidence defendant sought to have admitted would have been merely an

additional method for determining the speed of his truck at the time of the collision. The "skid-to-stop" calculation, which defendant admits is a reliable method of determining the speed of a vehicle, as well as the testimony of two eyewitnesses, provided additional sources of comparable evidence as to the speed of his truck. *See People v. Wyman, supra.* We also note that, while the "skid-to-stop" calculation supported the prosecution's theory that defendant was speeding, the eyewitness testimony was entirely favorable to defendant.

Therefore, because the trial court found that the damage to defendant's truck while impounded was not the result of bad faith conduct by the police, because the evidence sought by defendant was not apparently exculpatory before it was damaged, and because other evidence was admitted as to the speed of the truck that was at least as reliable as that which defendant sought, we hold that there was no violation of defendant's due process rights.

## II.

Defendant next contends that the trial court abused its discretion by granting an exception to its witness sequestration order, so that an expert could hear defendant's testimony and then testify in response thereto. Defendant also contends that the matters the expert was attempting to refute were irrelevant, that the expert's testimony constituted a discovery violation pursuant to Crim. P. 16, and that the trial court erred by denying defendant's motion for a continuance in response to the expert's "surprise" testimony. We perceive no error.

Defendant testified at his trial and was thereby subject to cross-examination. Prior to the direct examination of defendant, the prosecution successfully requested an exception to the witness sequestration order to permit two witnesses to hear the testimony of defendant.

During subsequent cross-examination, defendant testified that he had two to three beers at about 3:00 p.m. on the day of the collision, and gave further testimony as to his weight and the chronology of events on that day.

Following the cross-examination of defendant, the prosecution called a forensic toxicologist, who had heard the defendant's testimony, as an expert witness. The toxicologist testified that defendant's five measured blood alcohol levels were inconsistent with his testimony regarding either the chronology of events or the quantity of alcohol consumed, or both.

### A.

Defendant's first contention is that the evidence of alcohol consumption was irrelevant and that it was beyond the scope of his direct examination. We disagree.

"A defendant who takes the witness stand is subject to the same tests of credibility as any other witness." *People v. Neal,* 181 Colo. 341, 343, 509 P.2d 598, 599 (1973). The prosecution is entitled to "explain, refute, counteract or disprove" the defendant's testimony by "any competent evidence." *Deeds v. People,* 747 P.2d 1266, 1274 (Colo.1987).

Under CRE 611(b), the scope of cross-examination is not limited to precisely the "facts and acts" raised on direct examination but may touch on all matters necessary to permit an effective cross-examination. Rather, the rule "must be liberally construed to permit cross-examination on any matter germane to the direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict, or rebut testimony given by the witness." *People v. Sallis,* 857 P.2d 572, 574 (Colo.App.1993).

When the defendant does not object to the admission of evidence at trial, we review the trial court's ruling only for plain error. Accordingly, for reversal to be required the "defendant must demonstrate that the error so undermined the fundamental fairness of the trial that it casts serious doubt on the reliability of the verdict." *People v. Roy,* 948 P.2d 99, 102 (Colo.App.1997).

The first inquiry of defendant regarding his alcohol consumption was by the prosecution on cross-examination, without a defense objection. However, the inquiry was

relevant as to the issue of defendant's reckless driving, an element of the offense charged, and was clearly proper since defendant's direct examination focused on minimizing the recklessness of his driving. We hold that even had defendant objected to the questions regarding his alcohol consumption, that inquiry was both relevant and proper on cross-examination in light of the direct examination. Thus, there was no error, much less plain error, in the trial court's ruling.

## B.

■ The purpose of a sequestration order is to "prevent a witness from conforming his [or her] testimony to that of other witnesses and to discourage fabrication and collusion." *People v. Wood*, 743 P.2d 422, 429 (Colo. 1987). Issues relating to witness sequestration are entrusted to the sound discretion of the trial court, and we will not overturn the court's decisions absent an abuse of that discretion. *People v. Gomez*, 632 P.2d 586 (Colo.1981). And, to constitute an abuse of discretion, the defendant must show that he was prejudiced by the decision of the trial court.

■ Further, a court has discretion, in appropriate circumstances, to grant an exception allowing a witness to impeach the testimony of a criminal defendant after hearing the defendant's testimony. *People v. Wood, supra;*

■ Here, there is no hint of witness collusion or fabrication of testimony. The toxicologist was the only witness to testify regarding alcohol absorption and elimination rates and the scientific basis for his extrapolation and conclusion based on the alcohol data. Defendant could not have been prejudiced by a violation of the sequestration order when the purposes of the order were not impaired.

Furthermore, the toxicologist's testimony was based in part upon defendant's testimony, and allowing his presence during defendant's testimony was therefore a reasonable exercise of the trial court's discretion to promote courtroom efficiency. *See* CRE 611(a)(2); *People v. Gomez, supra.*

Had the toxicologist been excluded from the courtroom, the trial would have been delayed by the reading of relevant portions of defendant's testimony and further delayed while the toxicologist performed his calculations based on that testimony. We therefore hold that no prejudice to defendant resulted from that exercise of the court's discretion. *See People v. Wood, supra; People v. Gomez, supra.*

## C.

■ Defendant next contends that the toxicologist was improperly allowed to testify as to defendant's truthfulness. We disagree.

Our review of the toxicologist's testimony reveals that it was limited to the issue of alcohol absorption and elimination rates, and included an extrapolation of the blood alcohol data. The expert's conclusions drawn from that data conflicted with defendant's testimony. However, the toxicologist was not asked to express an opinion as to defendant's truthfulness, nor did he volunteer such an opinion. *Cf. People v. Koon*, 724 P.2d 1367 (Colo.App. 1986) (testimony by therapist that child victim was telling the truth about alleged sexual abuse inadmissible). Instead, his testimony was offered solely and properly to refute defendant's version of events prior to the collision.

We therefore hold that the toxicologist's testimony was properly admitted to "explain, refute, counteract or disprove" defendant's testimony on cross-examination. *See Deeds v. People, supra.*

## D.

Finally, defendant contends that the toxicologist's testimony constituted a "trial by ambush;" that, in violation of Crim. P. 16, the prosecution failed to provide a timely disclosure of the expert, his graphs and reports, and the nature of his testimony; and that it was an abuse of discretion for the trial court to deny his motion for a continuance to prepare to meet the expert's testimony. We disagree.

■ The designation of the toxicologist as a possible witness and his affiliation with a forensics laboratory were disclosed more

than two months before trial. The prosecution stated that the toxicologist had made no reports and that the graphs and calculations used by the toxicologist during his testimony were made during the trial after hearing defendant's testimony. The prosecution also indicated that the first discussion between the prosecutor and the toxicologist regarding the extrapolation evidence occurred in the morning of the day it was presented. The five blood alcohol test results relied upon by the toxicologist were also timely disclosed and were admitted into evidence. At trial, defense counsel's arguments on this issue were based primarily on the surprise nature of the toxicologist's testimony because counsel had "assumed" that the toxicologist was endorsed as a witness solely as to the accuracy of the tests performed at the laboratory.

The decision of the trial court whether to continue a trial is a matter entrusted to its sound discretion, and, absent a clear abuse of that discretion, we will not overturn such a ruling. *People v. Wells*, 776 P.2d 386 (Colo.1989). This standard applies even when a criminal defendant asserts a need to prepare to meet unexpected or newly discovered evidence or testimony. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

There is record support for the trial court's decision to deny the request for a continuance, and we perceive no abuse of discretion here. *See People v. Rodriguez, supra.*

### III.

Defendant asserts that the trial court abused its discretion by permitting seven of the eight photographs of the deceased child's nude body in the morgue to be admitted into evidence. Defendant contends the photographs were irrelevant and unfairly prejudicial, especially in light of a defense offer to stipulate as to the cause of death of the victim. We disagree.

Under CRE 401, evidence is relevant if it has a tendency to render a fact of consequence more or less probable than it would be without such evidence. However, evidence that is relevant must be excluded if the danger of unfair prejudice to the defendant significantly outweighs its probative value. CRE 403; *People v. Moya*, 899 P.2d 212 (Colo.App.1994).

When the defense offers to stipulate to the facts to be proven by photographs, it is not error for the trial court to permit the prosecution to decline the offer and prove those facts by the admission of the photographs, unless the prosecution's case would not be weakened by accepting the stipulation. *Martin v. People*, 738 P.2d 789 (Colo.1987); *People v. Carrier*, 791 P.2d 1204 (Colo.App. 1990). On the other hand, the prosecution may be required to accept the stipulation if the prosecution's case will not be weakened thereby. *Martin v. People*, 738 P.2d 789 (Colo.1987). The prosecution is generally permitted to prove its case with the evidence it believes most probative. *People v. McGregor*, 757 P.2d 1082 (Colo.App.1987).

When the defendant objects to photographic evidence on the basis that it is unfairly prejudicial, we review the trial court's decision only for abuse of its discretion in admitting or excluding the evidence. *People v. Carrier, supra.*

Our review of the photographs does not persuade us that the trial court abused its discretion in admitting all eight of them for the purpose of showing the nature and extent of the victim's injuries, an issue plainly relevant to the jury's assessment of the recklessness of defendant's conduct. *See People v. Harris*, 633 P.2d 1095 (Colo.App. 1981). Thus, we perceive no error in the admission of the photographs into evidence.

### IV.

Finally, defendant contends that the trial court improperly instructed the jury on the definition of the term "reckless" as an element of the offense of which he was charged. We disagree.

Defendant was convicted of vehicular homicide in violation of § 18–3–106(1)(a), C.R.S.1998:

If a person operates or drives a motor vehicle in a *reckless* manner, and such conduct is the proximate cause of the

death of another, such person commits vehicular homicide. (emphasis added)

In § 18–1–501(8), C.R.S.1998, the term "recklessly" is defined:

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.

The offense of "reckless driving" is defined in the Traffic Code in § 42–4–1401(1), C.R.S. 1998:

Any person who drives any motor vehicle, bicycle, or motorized bicycle in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property is guilty of reckless driving.

Defendant contends that the proper definition of "operating a motor vehicle in a reckless manner" as an element of the offense of vehicular homicide should be based on the Traffic Code definition of "reckless driving" in § 42–4–1401(1), rather than on the general definition of "recklessly" found in the Criminal Code. We are not persuaded.

Section 18–1–501, C.R.S.1998, states: "The following definitions are applicable to the determination of culpability requirements for offenses defined in this code." Since "this code" refers to the Criminal Code contained in Title 18, the definition of "recklessly" in § 18–1–501(8) is plainly intended to be used in interpreting other statutory sections contained within the Criminal Code. *See* § 18–1–101(1), C.R.S.1998; *cf. People v. Pena,* 962 P.2d 285 (Colo.App.1997) (holding that the two definitions are equivalent).

Therefore, we hold that the definition of "recklessly" in § 18–1–501(8) was properly applied to instruct the jury concerning the elements of vehicular homicide.

The judgment is affirmed.

Judge MARQUEZ and Judge DAVIDSON concur.