2012 COA 99

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Randy ARZABALA, Defendant–Appellant.

No. 10CA0651.

Colorado Court of Appeals,
Div. V.

June 21, 2012.

John W. Suthers, Attorney General, Wendy J. Ritz, First Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Kielly Dunn, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

¶ 1 Defendant, Randy Arzabala, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of vehicular assault (reckless), two counts of leaving the scene of an accident, two counts of providing alcohol to a minor, and one count of aggravated driving after revocation prohibited—leaving the scene of an accident (ADARP).

¶ 2 As a matter of first impression, we conclude, in Section II.B., that the appropriate unit of prosecution in the statute proscribing the offense of leaving the scene of an accident is the number of accident scenes, not the number of victims involved. Accordingly, because defendant was convicted and sentenced on two counts of leaving the scene of an accident, with each conviction corresponding to one of the two victims injured in the same accident, we remand to the trial court with directions to merge defendant's two convictions for leaving the scene of an accident into one, vacate the sentence imposed as to one of the convictions, and correct the mittimus accordingly. In all other respects, we affirm the judgment of conviction.

## I. Background

¶ 3 On the evening of October 11, 2008, defendant was driving with two female passengers, K.E. and O.C., both of whom were eighteen years old at the time. All three were drinking alcohol, which defendant had bought earlier that night.

¶ 4 Defendant struck a car driven by K.P., who had been parked on the right side of the road and was attempting to make a U-turn at the time of the collision. K.P. and her passenger, E.P., were seriously injured. K.E. also hit her head and suffered minor injuries, but neither defendant nor O.C. was injured.

¶ 5 Police responded to the scene of the accident and asked defendant for his driver's license and other information. Before receiving any information, however, police focused their attention on attending to K.P. and E.P. Meanwhile, defendant got into the back of an ambulance with K.E. to go to the hospital. On the way to the hospital, he jumped out of the ambulance when it stopped at a traffic light and fled. Later, a police detective learned that defendant was a habitual traffic offender and that his driver's license had been revoked.

¶ 6 In connection with these events, defendant was eventually arrested and charged with several counts: one count of driving under the influence (DUI); two counts of vehicular assault (reckless), with one count corresponding to K.P. as the victim and one count corresponding to E.P. as the victim; two counts of vehicular assault (DUI), with one count corresponding to K.P. and one count corresponding to E.P.; two counts of leaving the scene of an accident, with one count corresponding to K.P. and one count corresponding to E.P.; two counts of providing alcohol to a minor; ADARP (leaving the scene of an accident); and ADARP (DUI).

¶ 7 Before trial, the prosecution and defendant stipulated that both K.P. and E.P. suffered serious bodily injury as a result of the accident. At trial, the prosecution argued and presented evidence to prove that defendant was driving under the influence and was speeding at the time of the accident. The prosecution presented testimony from several witnesses, including K.E. and O.C., who both testified that they were drinking alcohol in the car the night of the accident. Police officers testified that they found alcoholic beverage containers, empty or partially empty, in defendant's car. The prosecution also presented the testimony of an accident reconstruction expert who opined that defendant was driving at a speed between 49 and 60 miles per hour at the time of the accident, well above the posted 35 miles per hour speed limit. The expert further opined that the accident would not have occurred had defendant been driving at the posted speed limit.

¶ 8 Defendant's theory of defense was that his driving was not the proximate cause of the accident. Consistent with his theory of defense, defendant presented argument and evidence attempting to show that K.P.'s conduct was an intervening cause of the accident because she attempted to make a sudden U-turn in front of him immediately before the collision. Although defendant admitted to drinking alcohol the night of the accident, he denied driving under the influence. Defendant also presented testimony of an accident reconstruction expert who testified that defendant was driving at a speed of 39 miles per hour, only four miles above the posted speed limit. The expert opined that the cause of the collision was K.P.'s "failure to properly monitor the roadway, and ensure that it was clear before she made her U-turn."

¶ 9 The jury convicted defendant of two counts of vehicular assault (reckless); two counts of leaving the scene of an accident; two counts of providing alcohol to a minor; and one count of ADARP (leaving the scene of an accident). The jury acquitted defendant of DUI; two counts of vehicular assault (DUI); and ADARP (DUI).

¶ 10 This appeal followed.

## II. Leaving the Scene of an Accident

¶ 11 Defendant makes two contentions regarding his two convictions for leaving the scene of an accident and his conviction for ADARP (leaving the scene of an accident). First, defendant contends that the evidence was insufficient to sustain his convictions for leaving the scene of an accident and for

ADARP (leaving the scene of an accident). Second, defendant contends that his two convictions for leaving the scene of an accident violate constitutional protections against double jeopardy. We reject his first contention and agree with the second.

### A. Sufficiency of the Evidence

¶ 12 We first address and reject defendant's contention that the evidence was insufficient to support his two convictions for leaving the scene of an accident and the aggravating factor of leaving the scene of an accident for his ADARP conviction.

¶ 13 When reviewing a sufficiency of the evidence contention, a court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999); *People v. McIntier*, 134 P.3d 467, 471 (Colo.App. 2005). The prosecution must be given the benefit of every reasonable inference that might be fairly drawn from the evidence. *McIntier*, 134 P.3d at 471. The determination of the credibility of witnesses is solely within the province of the fact finder, and it is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence. *Id.* An appellate court is not permitted to act as a "thirteenth juror" and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact. *Sprouse*, 983 P.2d at 778; *McIntier*, 134 P.3d at 471–72.

¶ 14 The offense of leaving the scene of an accident, section 42–4–1601, C.R.S.2011, is defined as follows:

> The driver of any vehicle directly involved in an accident resulting in injury to, serious bodily injury to, or death of any person shall immediately stop such vehicle at the scene of such accident or as close to the scene as possible but shall immediately return to and in every event shall remain at the scene of the accident until the driver

has fulfilled the requirements of section 42–4–1603(1).

§ 42–4–1601(1). Section 42–4–1603(1), C.R.S. 2011, imposes the following duties upon a driver who is involved in an accident:

> The driver of any vehicle involved in an accident resulting in injury to, serious bodily injury to, or death of any person or damage to any vehicle which is driven or attended by any person shall give the driver's name, the driver's address, and the registration number of the vehicle he or she is driving and shall upon request exhibit his or her driver's license ... and where practical shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if the carrying is requested by the injured person.

§ 42–4–1603(1).

¶ 15 If a driver fails to discharge his or her duties upon being involved in an accident, section 42–4–1601(2), C.R.S.2011, provides for a range of penalties depending on the degree of harm that results from the accident. A driver commits a class 1 misdemeanor traffic offense if the accident resulted in "injury" to "any person," a class 5 felony if the accident resulted in "serious bodily injury" to "any person," and a class 3 felony if the accident resulted in the death of "any person." § 42–4–1601(2)(a)–(c); *People v. Manzo*, 144 P.3d 551, 554 (Colo.2006). Here, because the parties stipulated that both K.P. and E.P. suffered serious bodily injury, defendant was charged with two counts of the class 5 felony of leaving the scene of an accident resulting in "serious bodily injury" to "any person." *See* § 42–4–1601(2)(b).

¶ 16 Considering the evidence as a whole, and viewing it in the light most favorable to the prosecution, we conclude that there was sufficient evidence to convict defendant of leaving the scene of an accident and to support the aggravating factor of leaving the scene of an accident for defendant's ADARP conviction. At trial, a police officer testified that he asked defendant for his driv-

er's license and registration, and defendant did not provide it. Another police officer testified that he asked defendant for his driver's license, registration, and proof of insurance and, "[Defendant] [s]tarted looking for those ... [and] I told him I would be right back." After the officer learned that defendant had left the scene in an ambulance, he searched defendant's car and found an expired insurance card and the vehicle registration, as well as defendant's wallet, which contained some photographs and phone numbers. The officer later learned that defendant "had jumped out of the back of an ambulance." Defendant testified that he provided the officers with all the requested information and that he was escorted to the ambulance by officers. However, defendant did not testify that he left his wallet in the car to comply with the officers' requests for his information.

¶ 17 Although there was conflicting testimony at trial about the manner in which defendant left the scene of the accident, we conclude there was sufficient evidence showing that defendant left the scene without performing at least some of the affirmative obligations set forth in section 42-4-1603(1). Presumably, the jury found the officers' testimony more credible than defendant's. Therefore, because the jury resolved testimonial inconsistencies in the prosecution's favor, we will not overturn the jury's credibility determinations where, as here, the evidence was sufficient to support defendant's convictions. *See Sprouse,* 983 P.2d at 778; *McIntier,* 134 P.3d at 471–72.

## B. Double Jeopardy

¶ 18 Defendant next contends that his two convictions for leaving the scene of an accident violate constitutional protections against double jeopardy. We agree.

### 1. Standard of Review

¶ 19 We review de novo a claim that a conviction violates a defendant's constitutional protection against double jeopardy. *Lucero v. People,* 2012 CO 7, ¶ 19, 272 P.3d 1063, 1065; *People v. Mintz,* 165 P.3d 829, 833 (Colo.App.2007). Where a reviewing court finds a double jeopardy violation, re-

gardless of whether the issue was raised in the trial court, the defendant is entitled to appropriate relief on appeal. *See Lucero,* ¶ 26 (merging three theft convictions into one class 3 felony conviction and remanding for resentencing); *People v. Tillery,* 231 P.3d 36, 47–48 (Colo.App.2009), *aff'd sub nom. People v. Simon,* 266 P.3d 1099 (Colo.2011) (even under a plain error analysis, an unpreserved double jeopardy error will invariably mean a defendant is entitled to relief on appeal).

### 2. Law

¶ 20 The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Woellhaf v. People,* 105 P.3d 209, 214 (Colo. 2005). As pertinent here, the Double Jeopardy Clause protects not only against a second trial for the same offense, but also "against multiple punishments for the same offense." *Woellhaf,* 105 P.3d at 214 (quoting *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)). "Multiplicity" is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct. *Id.; Quintano v. People,* 105 P.3d 585, 589 (Colo. 2005).

¶ 21 Double jeopardy is commonly implicated where multiple counts are charged and multiple punishments imposed for the same criminal conduct. *Woellhaf,* 105 P.3d at 214. However, the Double Jeopardy Clause does not prevent the General Assembly from specifying multiple punishments based on the same criminal conduct. *Id.; Patton v. People,* 35 P.3d 124, 129 (Colo. 2001). Rather, the General Assembly may establish and define offenses by prescribing the allowable "unit of prosecution." *Woellhaf,* 105 P.3d at 215.

¶ 22 Whether multiple punishments are permissible entails a determination of the legislatively prescribed unit of prosecution. *Id.; People v. Williams,* 651 P.2d 899, 902–03 (Colo.1982). The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be

divided into discrete acts for purposes of prosecuting multiple offenses. *Woellhaf,* 105 P.3d at 215; *People v. Borghesi,* 66 P.3d 93, 98 (Colo.2003). Hence, once the General Assembly prescribes the unit of prosecution, that prescription determines the scope of protection offered by the Double Jeopardy Clause. *Woellhaf,* 105 P.3d at 215. If the convictions are not based on separate offenses, they merge with one another. *Id.* at 220.

¶ 23 To determine the unit of prosecution, we look exclusively to the statute. *Id.* at 215. In construing a statute, we must determine and effectuate the intent of the General Assembly. We discern the General Assembly's intent when possible from the plain and ordinary meaning of the statutory language. *Id.*

### 3. Analysis

¶ 24 Here, defendant was charged with two counts of leaving the scene of an accident with serious bodily injury. One count corresponded to defendant's leaving the scene of the accident resulting in serious bodily injury to K.P.; the other count corresponded to his leaving the scene of the same accident resulting in serious bodily injury to E.P. *See* § 42–4–1601(2)(b) (leaving the scene of an accident resulting in serious bodily injury is a class 5 felony). The jury convicted defendant of both counts, and, as we have concluded above, the evidence was sufficient to sustain his convictions. Thereafter, the trial court imposed two sentences of three years each corresponding to defendant's two convictions for leaving the scene of an accident, to be served concurrently with each other and with defendant's five-year sentence for vehicular assault (reckless) against K.P.

¶ 25 On appeal, defendant contends that his two convictions for leaving the scene of an accident violate double jeopardy. Specifically, he argues that the unit of prosecution for the offense of leaving the scene of an accident is the number of accident scenes, not the number of victims involved in any one accident. Accordingly, defendant contends that he cannot be convicted and sentenced twice for leaving the scene of the one accident that occurred here, regardless of wheth-

er both K.P. and E.P. suffered serious bodily injury. The People contend that the unit of prosecution is the number of victims involved in the accident.

¶ 26 Based on our interpretation of the plain language of the statute, we conclude that the legislatively prescribed unit of prosecution is the number of accident scenes, not the number of victims involved in the accident. Our interpretation is also consistent with Colorado case law and with persuasive out-of-state authority construing similar statutory language.

¶ 27 The plain language of sections 42–4–1601(1) and 42–4–1603(1) evinces a legislative intent to criminally punish leaving the scene of "an accident," regardless of the number of victims involved. Throughout the statutory scheme, the noun "accident" is invariably singular and preceded by the indefinite article "an," the definite article "the," or the adjective "such." *See Brooks v. Zabka,* 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("[T]he definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'"); *Webster's Third New International Dictionary* 2283 (2002) (defining "such" as "having a quality already or just specified—used to avoid repetition of a descriptive term").

¶ 28 In contrast, the noun "person" is always preceded by the adjective "any." "Any" means "all." *People v. Owens,* 219 P.3d 379, 384 (Colo.App.2009). It "is a term of expansion without restriction or limitation." *Proactive Techs., Inc. v. Denver Place Assocs. Ltd. P'ship,* 141 P.3d 959, 961 (Colo. App.2006). Accordingly, throughout the statutory scheme, the term "any person" encompasses the possibility that multiple persons may be injured in a single accident.

¶ 29 Thus, because "accident," as used here, is singular, the statute imposes affirmative obligations on a driver stemming from a single accident. Because "any" means "all" and is a "term of expansion without restriction or limitation," the statute imposes affirmative obligations on a driver to render aid to "all" persons injured in a single accident. Accordingly, the underlying crime—leaving

the scene of an accident without performing the affirmative obligations imposed by the statute, including the duty to exchange driver information and to render aid to "any person"—remains the same, regardless of the number of persons who sustain injury in the accident. *See* § 42–4–1603(1); *see also People v. Hernandez*, 250 P.3d 568, 572 (Colo.2011) (holding that a driver violates the leaving the scene of an accident statute by failing to identify himself or herself as the driver). Accordingly, we conclude that the unit of prosecution is the number of accident scenes defendant left before performing his affirmative obligations, not the number of victims injured in a single accident.

¶ 30 We recognize, of course, that the number of victims injured may very well matter for other offenses, and criminal charges for offenses apart from the driver's failure to stop at the scene can be pursued, as here, through separate charges addressing each victim. *See* § 18–3–205(1)(a)–(c), C.R.S.2011 (defining the offense of vehicular assault, a class 4 or 5 felony); *State v. Powers*, 200 Ariz. 363, 26 P.3d 1134, 1135 (2001).

¶ 31 Although not dispositive, we also find it instructive that the offense of leaving the scene of an accident is listed as a motor vehicle offense under Title 42, rather than a crime against a person under Title 18. *See Commonwealth v. Constantino*, 443 Mass. 521, 822 N.E.2d 1185, 1188 (2005).

¶ 32 Our plain language interpretation is also supported, at least indirectly, by Colorado case law. In *Manzo*, our supreme court concluded that the crime of leaving the scene of an accident is a strict liability offense. *Manzo*, 144 P.3d at 552. In so concluding, the court reasoned that implying a culpable mental state was not necessary to further the legislative intent behind the traffic code to promote "driver responsibility" and "public safety." *Id.* at 556. The court stated:

> Leaving the Scene of an Accident with Serious Injury does not involve a culpable mental state. *Rather, the inquiry is simply whether or not there has been an accident. If so, the duty to stop and assist arises and the failure to stop and assist results in criminal liability.* Accordingly, implying a culpable mental state is not

necessary to further the legislative intent represented by the criminal code.

*Id.* (emphasis added). The court further reasoned that the offense was one of strict liability in part because it was a "public welfare offense" and was not focused on preventing harm to a specific victim:

> [R]ather than directly resulting in injury to a specific victim, the offense of Leaving the Scene of an Accident with Serious Injury creates the probability of injury. Section 42–4–1601 purports to minimize the probability of harm that may result from a driver fleeing the scene of an accident.

*Id.* at 558.

¶ 33 Accordingly, *Manzo* suggests that the offense of leaving the scene of an accident criminalizes a driver's "failure to stop and assist" following an accident that "creates the probability of injury," not the conduct of a driver following an accident "resulting in injury to a specific victim." *See id.* at 556, 558; *see also People v. Fuentes*, 258 P.3d 320, 323–25 (Colo.App.2011) (concluding that, for double jeopardy purposes, a single unlawful entry can support only one conviction of first degree burglary, even if there are multiple assaults during the burglary). Thus, *Manzo* supports our conclusion, at least indirectly, that the unit of prosecution for the offense of leaving the scene of an accident is the number of accident scenes, not the number of victims.

¶ 34 Similarly, in *Hernandez*, the supreme court held that a driver violates the leaving the scene of an accident statute by failing to affirmatively identify himself or herself as the driver. *Hernandez*, 250 P.3d at 572. Thus, *Hernandez* lends further support to our conclusion that the unit of prosecution is the number of accident scenes, not the number of victims, because logic and common sense suggest that a driver can fail to affirmatively identify himself or herself only once at one accident scene, regardless of the number of injured victims. *See Montez v. People*, 2012 CO 6, ¶ 15, 269 P.3d 1228, 1231 (we use logic and common sense when deducing the plain language meaning of a statute).

¶ 35 Moreover, contrary to the People's argument on appeal, *People v. McAfee*, 104

P.3d 226 (Colo.App.2004), does not compel a different conclusion. In *McAfee,* a division of this court concluded that the trial court did not abuse its discretion by imposing consecutive sentences for two convictions for leaving the scene of an accident against different victims. *Id.* at 231–32. The division reasoned that a court may, within its discretion, impose consecutive sentences where multiple victims were involved. *Id.* at 232. However, the precise issue before us in this case was not presented to the division in *McAfee.* *McAfee* concerned the propriety of sentencing a defendant to consecutive sentences when multiple victims were involved, not whether a defendant's two convictions for leaving the scene of an accident violated double jeopardy. *Id.* at 231–32. Accordingly, *McAfee* is inapposite here. In any event, to the extent that *McAfee* can be read to implicitly stand for the proposition that the unit of prosecution for the offense of leaving the scene of an accident is the number of injured victims, we respectfully disagree for the reasons stated herein.

¶ 36 Although the issue raised here is one of first impression in Colorado, the overwhelming majority of courts in other states that have construed similar statutory language has reached the same conclusions as we do here. *See, e.g., Dake v. State,* 675 So.2d 1365, 1367 (Ala.Crim.App.1995) (holding that double jeopardy prohibits multiple convictions for the offense of leaving the scene of an accident based on the number of victims involved in the accident, because the statute requires a driver to render aid to "any person," and because the offense is not a crime against a person); *Powers,* 26 P.3d at 1135 (holding that double jeopardy prohibits multiple convictions based on the number of victims involved in the accident, because the plain meaning of the terms "accident" and "scene of the accident" do not depend on the number of victims); *Hoag v. State,* 511 So.2d 401, 402 (Fla.Dist.Ct.App.1987) (holding that the "gist of [the leaving the scene of an accident] statute is the failure … to stop" and that, in the instant case, "there was but one scene of the accident and one failure to stop" despite there being five victims); *People v. Sleboda,* 166 Ill.App.3d 42, 116 Ill.Dec. 620, 519 N.E.2d 512, 522 (1988) (holding that

"an individual can only be convicted once for leaving the scene of one accident since the focus is on remaining at the scene of the accident" and not on the number of victims involved); *Nield v. State,* 677 N.E.2d 79, 82 (Ind.Ct.App.1997) (holding that a driver's duties upon being involved in an accident stem from the "occurrence of 'an accident,'" regardless of the number of persons injured). We find the reasoning of these cases persuasive and applicable here.

¶ 37 We recognize that a smaller number of out-of-state cases have come to a different conclusion than the one we reach here. For the reasons that follow, we find these cases distinguishable or not persuasive.

¶ 38 In *State v. Hartnek,* 146 Wis.2d 188, 430 N.W.2d 361 (Wis.Ct.App.1988), the Wisconsin Court of Appeals held that multiple convictions for leaving the scene of an accident with multiple victims did not violate double jeopardy. *Id.* at 364. The court reasoned that the Wisconsin statute required drivers to render assistance to "any person injured," but that the statute imposing penalties for failure to render such assistance referred to injuries or death sustained by "a person" or "the person," suggesting that multiple penalties could be imposed for multiple victims. *Id.* at 363.

¶ 39 *Hartnek* is distinguishable. In *Hartnek,* the court interpreted and, indeed, explicitly relied on, statutory language that is fundamentally different from that at issue here. Unlike the statutory language interpreted in *Hartnek,* the leaving the scene of an accident statute in Colorado does not contain any indefinite or definite articles preceding the noun "person." *See* §§ 42–4–1601(1), 42–4–1603(1). Rather, in the Colorado statute, the noun "person" is always preceded by the adjective "any," rendering the *Hartnek* court's analysis inapplicable. *See id.*

¶ 40 *Spradling v. State,* 773 S.W.2d 553 (Tex.Crim.App.1989), is similarly distinguishable because the *Spradling* court relied on *Hartnek,* which, as discussed above, interpreted statutory language that is fundamentally different from that found in Colorado's statute. *Id.* at 556–57. We also note that *Spradling* was a three-to-three decision, a tie

vote that resulted in an affirmance of the decision of the intermediate appellate court, rendering its value as persuasive authority questionable. *See People v. Newton,* 155 Cal.App.4th 1000, 66 Cal.Rptr.3d 422, 426 (2007) (noting the three-to-three decision in *Spradling* and finding *Hartnek* "less than persuasive"). And, in any event, we find the reasoning of the dissenting opinions in *Spradling* more persuasive and consistent with Colorado law. *See Spradling,* 773 S.W.2d at 557–66 (Clinton, J., and Teague, J., separately dissenting).

¶ 41 Here, it is uncontested that defendant left the scene of only one accident. Given our plain language analysis that the unit of prosecution prescribed by the General Assembly for the offense of leaving the scene of an accident is the number of accident scenes, not the number of victims in any given accident, we conclude that defendant's two convictions for leaving the scene of an accident violate his right to be free from double jeopardy. Thus, we remand to the trial court with directions to merge defendant's two convictions for leaving the scene of an accident into one; to vacate the sentence imposed as to one of the convictions; and to correct the mittimus accordingly.

### III. Jury Instructions

¶ 42 Defendant next contends that the trial court reversibly erred by giving the jury two instructions that allegedly lessened the prosecution's burden of proof and misled the jury in violation of his constitutional rights. Specifically, defendant contends that (1) Instruction 21 incorrectly stated that the offense of vehicular assault (reckless) was a strict liability crime; and (2) Instruction 23 incorrectly instructed the jury about the element of proximate cause for vehicular assault (reckless). We reject defendant's contentions.

### A. Standard of Review

¶ 43 We review jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. *People v. Lucas,* 232 P.3d 155, 162 (Colo.App.2009).

¶ 44 As an initial matter, we reject the People's contention that we should apply the invited error doctrine here and decline to address defendant's contentions because defense counsel failed to object and agreed to the jury instructions as given. There is no evidence in the record suggesting that defendant failed to object as a matter of trial strategy, nor is there any evidence in the record suggesting that defendant tendered the jury instructions at issue on appeal. *Cf. People v. Zapata,* 779 P.2d 1307, 1308–09 (Colo.1989) (deciding not to address the merits of defendant's plain error argument where defendant's counsel prepared and tendered the theory of the case instruction about which defendant later complained on appeal). Rather, counsel's failure to object was apparently the result of an oversight and was not a strategic decision. *See People v. Stewart,* 55 P.3d 107, 119–20 (Colo.2002).

¶ 45 Therefore, where, as here, the defendant did not object to the jury instructions at trial, we review for plain error. *People v. Vecellio,* 2012 COA 40, ¶ 31, 292 P.3d 1004. Plain error is error that is both "obvious and substantial." *People v. Miller,* 113 P.3d 743, 750 (Colo.2005). It is error that "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003). To warrant reversal under a plain error standard in the context of jury instructions, the defendant must "demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001) (quoting *Bogdanov v. People,* 941 P.2d 247, 255–56 (Colo.), *amended,* 955 P.2d 997 (Colo.1997), *and disapproved of by Griego v. People,* 19 P.3d 1 (Colo.2001)).

### B. Instruction 21

¶ 46 Defendant contends that Instruction 21 erroneously instructed the jury that the offense of vehicular assault (reckless) was a strict liability crime, thereby lessening the prosecution's burden of proof and misleading

the jury in violation of his constitutional rights. We perceive no plain error.

¶ 47 Instruction 21 provided:

The crime of vehicular assault is one of strict liability. This crime is established by conduct which includes a voluntary act or the omission to perform an act which the defendant is physically capable of performing. Intent to commit the crime need not be shown, but the act must be voluntary.

¶ 48 Strict liability crimes do not require a culpable mental state. *See* § 18–1–502, C.R.S.2011 ("If [a voluntary act or omission] is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of 'strict liability.' "); *People v. Caddy*, 189 Colo. 353, 354, 540 P.2d 1089, 1090 (1975) (quoting statute).

¶ 49 Vehicular assault (DUI) "is a strict liability crime." § 18–3–205(1)(b)(I). To convict, the prosecution must prove beyond a reasonable doubt that defendant drove "while under the influence of alcohol" and that "this conduct [was] the proximate cause of a serious bodily injury to another." *Id.* In contrast, vehicular assault (reckless) is not a strict liability crime. § 18–3–205(1)(a). To convict, the prosecution must prove beyond a reasonable doubt that defendant drove "in a reckless manner" and that "this conduct [was] the proximate cause of serious bodily injury to another." *Id.*

¶ 50 On appeal, defendant contends that Instruction 21 conflated vehicular assault (DUI) and vehicular assault (reckless) into the "crime of vehicular assault," which, as Instruction 21 states, is a "strict liability [crime]."

■ ¶ 51 We construe "strict liability" as "a term carrying a 'technical or particular meaning,' the definition of which must be presented to a jury if [it is] to 'construe[ ] [it] accordingly.' " *Griego*, 19 P.3d at 7 (quoting § 2–4–101, C.R.S.2011). We also presume the jury understood and followed the instructions given to it. *See Domingo–Gomez v. People*, 125 P.3d 1043, 1053 (Colo.2005); *Leo-*

*nardo v. People*, 728 P.2d 1252, 1256 (Colo. 1986).

■ ¶ 52 Here, Instruction 21 does not define "strict liability" offenses as crimes lacking a culpable mental state requirement. Rather, the only reference to "strict liability" provided to the jury in Instruction 21 suggests, in context, that "strict liability" crimes are established by a voluntary act or omission but without the element of "intent." However, the mental state of "intent" is merely one of four culpable mental states defined in Colorado's criminal code. § 18–1–501, C.R.S.2011. Accordingly, Instruction 21 correctly instructed the jury that defendant need not have *intended* to commit vehicular assault (reckless) to be convicted, but the jury was not instructed that it could convict him for vehicular assault (reckless) without *any* mens rea element.

¶ 53 In that regard, we discern no irreconcilable contradiction between Instruction 21 and Instruction 11, which accurately outlined the elements of vehicular assault (reckless), including the mens rea that *was* required for a conviction of that charge. Thus, Instruction 11 instructed the jury, in pertinent part, that it should find defendant guilty of vehicular assault (reckless) only if the prosecution had proven beyond a reasonable doubt that defendant drove "in a reckless manner." Instruction 19 further instructed the jury that it should find defendant guilty of a crime if he "committed a voluntary act prohibited by law accompanied by a culpable mental state," that "[c]ulpable mental state means recklessly, or knowingly," and that "[a] person acts 'recklessly' when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

¶ 54 We conclude that these detailed and correct descriptions of the culpable mental state necessary for a conviction for vehicular assault (reckless) found in Instructions 11 and 19 did not conflict with Instruction 21's statement that a finding of intent was unnecessary. *See* § 18–1–501 (distinguishing the mental states of "intentionally," "recklessly," and "knowingly").

¶ 55 Therefore, we conclude the jury instructions as a whole accurately informed the jury of the prosecution's burden and were

not so misleading or confusing as to cast serious doubt on the reliability of the judgment of conviction. *See Miller,* 113 P.3d at 750; *Garcia,* 28 P.3d at 344.

### C. Instruction 23

¶ 56 Defendant also contends that Instruction 23 inaccurately instructed the jury on the element of proximate cause for vehicular assault (reckless). We disagree.

¶ 57 Instruction 23 provided:

For the purposes of the strict liability crime of vehicular assault, 'proximate cause' means the voluntary act of driving a motor vehicle while under the influence of alcohol as defined in instruction number 16. The prosecution is not required to prove that the intoxication affected the driver's operation in a manner that results in a collision. This should be considered with the affirmative defense in instruction number 24.

¶ 58 As discussed above, regarding the charge of vehicular assault (DUI), the prosecution must prove beyond a reasonable doubt that the defendant drove "while under the influence of alcohol" and that "this conduct [was] the proximate cause of a serious bodily injury to another." § 18–3–205(1)(b)(I). To convict on the count of vehicular assault (reckless), the prosecution must prove beyond a reasonable doubt that the defendant drove "in a reckless manner" and that "this conduct [was] the proximate cause of serious bodily injury to another." § 18–3–205(1)(a).

¶ 59 On appeal, defendant contends that Instruction 23 misstated the law of proximate cause for the offense of vehicular assault (reckless) by conflating it with the law of proximate cause for vehicular assault (DUI). Accordingly, defendant contends that Instruction 23 incorrectly instructed the jury that the proximate cause element could be satisfied without a finding that the victims' injuries were the natural and probable consequence of defendant's reckless driving. Defendant also argues that Instruction 23 was confusing to the jury.

¶ 60 Although we recognize that Instruction 23 would have been more accurate had it explicitly stated that it related only to the offense of vehicular assault (DUI) (for which defendant was acquitted), when read in context and in conjunction with the other instructions, we conclude that the references in Instruction 23 to "driving under the influence" and "intoxication" make clear that it applied only to the charge of vehicular assault (DUI). *See Lucas,* 232 P.3d at 162 (we review jury instructions as a whole). In addition, the record shows that, in rebuttal closing argument, the prosecutor expressly linked the reference to proximate cause in Instruction 23 to Instruction 10, the elemental instruction on vehicular assault (DUI). Given these circumstances, we conclude that Instruction 23, when read in context, was not misleading or confusing.

¶ 61 Accordingly, we perceive no error, let alone plain error, in Instruction 23.

### IV. Prosecutorial Misconduct

¶ 62 Defendant contends that the prosecution twice committed misconduct during closing and rebuttal closing argument by misstating the law and the evidence. We are not persuaded.

¶ 63 Where, as here, the defendant did not object at trial, we review for plain error. *Miller,* 113 P.3d at 749; *see also Wend v. People,* 235 P.3d 1089, 1097 (Colo. 2010). Prosecutorial misconduct constitutes plain error only where there is a "substantial likelihood" that it affected the verdict or deprived the defendant of a fair trial. *People v. Constant,* 645 P.2d 843, 847 (Colo.1982). Accordingly, unless the prosecution's conduct is flagrant or "glaringly or tremendously" improper, it is not plain error. *Id.* (quoting *People v. Simbolo,* 188 Colo. 49, 53, 532 P.2d 962, 964 (1975)). "[P]rosecutorial misconduct in closing arguments rarely ... is so egregious as to constitute plain error...." *Id.* (quoting *People v. Sepeda,* 196 Colo. 13, 25, 581 P.2d 723, 732 (1978)).

¶ 64 On appeal, we evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. Strock,* 252 P.3d 1148, 1153 (Colo.App.2010). Defense counsel's failure to object is a factor that may be considered in examining the

impact of the prosecution's argument and may "demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging." *Id.* (quoting *People v. Rodriguez,* 794 P.2d 965, 972 (Colo.1990)). The prosecution has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts. *People v. McBride,* 228 P.3d 216, 221 (Colo.App.2009).

 ¶ 65 First, defendant contends that the prosecution committed misconduct by misstating the law of proximate cause. Specifically, defendant contends that the prosecution's statements during closing argument erroneously suggested to the jury that "any bad decision made by [defendant], accompanied by his involvement in the accident, was sufficient for a finding of guilty." We disagree.

¶ 66 Here, during closing argument, the prosecution analogized the many pieces of evidence to the game of Jenga, arguing as follows:

> You have sat through three days of testimony and evidence in this case. You heard a tremendous amount of evidence. There's no one piece of evidence in this case that is the key; tells you everything that you need to know about this accident; tells you whether or not the Defendant is guilty.

> When we were speaking, during jury selection, we talked about that game, Jenga game, where you put all of the blocks together, you pull the blocks out, the person who [loses] that game is the person who pulls that last block out, and then all of the other blocks come down.

> We're not asking you to focus on that last block. We're not asking you to focus on the block before that. We are asking you to focus on all of those blocks that came out. This accident didn't occur … because of one bad decision that [defendant] made that night. You can't boil this case down to one speed figure. One determination of whose headlights were on and whose weren't. One measurement of how far those cars took to stop after the accident. You need to look at all of those bad decisions in context.

¶ 67 We perceive no error in the prosecution's argument, much less plain error. Contrary to defendant's contention, the prosecution did not suggest that the jury could convict defendant on the sole basis that he had made a "bad decision." Rather, the prosecution was merely arguing to the jury, consistently with the instructions given to it after the close of evidence, that it should consider all the evidence when evaluating the case.

 ¶ 68 Second, defendant contends that the prosecution committed misconduct during rebuttal closing argument by incorrectly stating that K.P. was pulling out of a driveway when the accident occurred, rather than attempting a U-turn from a parked position on the side of the road. We perceive no plain error in the prosecution's statements.

¶ 69 During rebuttal closing argument, the prosecution made the following statements about K.P. pulling out of a driveway before the accident:

- The Defense wants you to acquit the Defendant. He wants you to acquit, because [K.P.] pulled out of a driveway on that night.… The law tells you that what she did that night, pulling out of a driveway in a residential neighborhood was a foreseeable act.

- [K.P.] did pull out of a driveway on Sable Boulevard on that night, but it was the Defendant who was drunk.

- A car pulling out of a driveway in a residential neighborhood is foreseeable.

¶ 70 We conclude that these statements did not rise to the level of plain error. On appeal, the People concede that the prosecution "misspoke" during rebuttal closing argument when it stated that K.P. was pulling out of a driveway. Similarly, defendant admits in his opening brief on appeal that "uncontroverted evidence established that [K.P.] was parked at the side of the road and turned directly into the street in order to turn her car around." At trial, such evidence included the following:

- A police officer's testimony that he was "pretty dumbfounded how this accident

took place, because there was no driveway or street for [K.P.'s car] to turn off";

- The victim E.P.'s testimony that K.P. was "in the process of turning the car around, to pull around and park in the driveway" when the collision occurred;
- Defendant's testimony that he never saw K.P.'s car but that "[t]hey say it was parked off to the side, trying to do a U-turn";
- K.E.'s testimony that "[she] blinked and [K.P.'s] car was in front of [them], like trying to flip a U-turn"; and
- O.C.'s testimony that K.P.'s car was "on the side of the road" before the collision.

¶ 71 Further, during the prosecutor's opening statement, she stated that defendant collided with K.P. while she was attempting to "complete that U-turn." During defendant's opening statement, defense counsel stated that K.P. was parked "on the right-hand side of the road" and that K.P. and E.P. likely "were smoking marijuana before they made that U-turn." Finally, during closing argument, defense counsel argued that K.P. "was sitting [on the side of the road] for ten minutes, not doing anything, and all of a sudden decided to pull a uwee [sic]; flip a uwee [sic] with no lights on."

¶ 72 Given this record, we conclude that there is no substantial likelihood that the prosecution's misstatements during rebuttal closing contributed to defendant's conviction, because the evidence presented at trial made it abundantly clear to the jury that K.P. was attempting a U-turn at the time of the collision, not pulling out of a driveway. *See Constant*, 645 P.2d at 847. Accordingly, we perceive no plain error in the prosecution's challenged statements.

¶ 73 We also reject defendant's contention that the "combination of erroneous statements warrants reversal," given our conclusion above that the prosecution's statements about proximate cause did not constitute error, much less plain error.

## V. Testimony by K.P.'s Mother

¶ 74 Defendant next contends that the trial court erred by admitting the testimony of K.P.'s mother. We are not persuaded.

¶ 75 Only relevant evidence is admissible. CRE 402. However, pursuant to CRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. In weighing the probative value of relevant evidence against the danger of unfair prejudice, CRE 403 strongly favors the admission of evidence. *People v. Salas*, 902 P.2d 398, 401 (Colo.App.1994). On review, we give the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *People v. Gibbens*, 905 P.2d 604, 607 (Colo.1995). We will not disturb the trial court's evidentiary rulings on review absent an abuse of discretion. *See People v. Quintana*, 882 P.2d 1366, 1374 (Colo.1994).

¶ 76 At some point before trial, the prosecution and defendant stipulated that both K.P. and E.P. suffered serious bodily injury as a result of the accident. At trial, the prosecution called K.P.'s mother to testify. Defendant objected, arguing that "it would be more prejudicial than probative to put this individual witness on the stand," given the parties' stipulation regarding K.P.'s serious bodily injury. Defendant, however, admitted that he did not "know what she would say" and asked the prosecution to submit an offer of proof about "what the substance of the testimony would be." The prosecution stated that K.P.'s mother would "introduce her daughter," show that K.P. was not injured before the accident but was injured after the accident, and prove that she was a "person." The court ruled it would allow testimony that "[K.P.] is and was a living human being on [the date of the accident]," given that that fact had not been stipulated to, and that it would not "bar any witnesses, but ... [would] deal with the objections as they come."

¶ 77 At trial, K.P.'s mother identified her daughter as the person in the courtroom sitting in a wheelchair. She then briefly described her daughter's life before the accident, including details about how she liked shopping, socializing, and athletics. K.P.'s mother then briefly described her daughter's

life after the accident, including details that she was "banged up pretty bad," was "like a toddler," and was "totally dependent" on her parents. Defendant did not object to any of this testimony.

¶ 78 Initially, we note that we are unclear about what defendant challenges on appeal. In his opening brief, defendant contends that the substance of the mother's testimony was irrelevant and unfairly prejudicial. However, in his reply brief, defendant seemingly narrows his contention, stating as follows:

Defense counsel asked the trial court to preclude any testimony from [K.P.'s] mother and the trial court refused to do so. That refusal is the decision by the trial court that is here raised as erroneous.

¶ 79 Assuming defendant's contention is as narrow as his reply brief suggests, we conclude that the trial court's decision to not "bar any witnesses" and to "deal with the objections as they come" was not an abuse of discretion. *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009) (we will reverse an evidentiary ruling for abuse of discretion only where the ruling is manifestly arbitrary, unreasonable, or unfair).

¶ 80 However, assuming that defendant also assigns error to the substance of K.P.'s mother's testimony, which was admitted without objection, we perceive no plain error for the following reasons:

- The testimony concerned the nature and severity of K.P.'s injuries, which was relevant to the disputed issue of recklessness. *See People v. Scarlett*, 985 P.2d 36, 42 (Colo.App.1998).
- The jury was instructed that "[n]either sympathy nor prejudice should influence [its] decision." *See Domingo–Gomez*, 125 P.3d at 1053 (we presume the jury followed the court's instructions); *People v. Kenny*, 30 P.3d 734, 740 (Colo.App. 2000) ("[T]he jury was instructed that neither sympathy nor prejudice should influence its decision, and defendant has not overcome the presumption that the jury followed this instruction.").
- The testimony was brief.
- Defense counsel did not object to the testimony. *Cf. Strock*, 252 P.3d at 1153

(failure to object is a factor that may be considered in examining whether prosecutor's argument rises to the level of plain error).

- K.P. was present in the courtroom in her wheelchair, making the testimony regarding her injuries somewhat cumulative. *See People v. Jaramillo*, 183 P.3d 665, 669 (Colo.App.2008) (finding harmless error where testimony was cumulative of other testimony not challenged on appeal).
- During its opening statement, the prosecution stated, without objection, that K.P. had been a "track star." *See id.*
- The prosecution did not specifically mention the mother's testimony again, including during closing arguments.

## VI. Other Evidentiary Issues

¶ 81 Defendant contends that the trial court reversibly erred by admitting his unredacted driving record into evidence and by permitting testimony about his prior experiences with marijuana. We reject these contentions in turn.

### A. Admission of Driving Record

¶ 82 Defendant contends that the court committed plain error by admitting his unredacted driving record into evidence, because it contained irrelevant and unduly prejudicial information and constituted inadmissible character evidence under CRE 404(b) and *People v. Spoto*, 795 P.2d 1314 (Colo.1990). We disagree.

¶ 83 We review a trial court's ruling on the admissibility and relevance of evidence for an abuse of discretion and will only reverse the ruling if it was manifestly arbitrary, unreasonable, or unfair. *Yusem*, 210 P.3d at 463. Moreover, where, as here, the defendant failed to object to the admission of evidence, we review for plain error. *People v. Dunlap*, 124 P.3d 780, 806 (Colo. App.2004).

¶ 84 During the prosecution's case-in-chief, a detective testified that, during his investigation, he learned defendant was a habitual traffic offender. During the detective's testi-

mony, the prosecution offered into evidence defendant's driving record, which was admitted without objection and without any request for redaction. The detective then testified that defendant's driving record indicated defendant was a habitual traffic offender and that he had received notice that his driver's license had been revoked. The prosecution did not ask the detective any other questions about defendant's driving record. However, as pertinent here, the driving record also contained evidence of defendant's prior speeding violations.

¶ 85 At trial, although it was uncontested that defendant was speeding at the time of the accident, there was a dispute about how fast he had been driving. As discussed above, the prosecution's expert opined that defendant had been driving between 49 and 60 miles per hour at the time of the accident. Defendant's expert testified that he had been driving 39 miles per hour. Defendant testified that he had been driving an "average" speed.

¶ 86 During closing argument, the prosecution made the following remarks in reference to defendant's testimony about driving at an "average" speed:

> The Defendant's own testimony on the stand, he was going an average speed. [Defense counsel] asked him a couple of times; he responded average speed. Well, what is average speed? Well, when you go back into the jury room, feel free to look at Exhibit Number 57, the Defendant's driving history, and you can determine what an average speed would be to him.

¶ 87 Initially, we conclude that the trial court did not err by admitting the driving record. The driving record was relevant to show defendant had knowledge of his license revocation as a habitual offender under ADARP. See People v. Parga, 964 P.2d 571, 574 (Colo.App.1998) (holding that admission of a defendant's driving record was proper because it was "relevant to establish his knowledge of his status as a habitual offender"). Further, as evidenced by the circumstances under which the driving record was admitted, the prosecution sought admission of defendant's driving record to show his knowledge of revocation, not to show his bad character or propensity. See CRE 404(b); People v. Rodriguez, 849 P.2d 799, 802 (Colo. App.1992).

¶ 88 Moreover, we perceive no plain error either in the admission of this evidence or in the prosecution's remarks during rebuttal closing regarding defendant's prior speeding violations as reflected in his driving record. Although the prosecution's remarks were arguably improper, defendant did not object to them during rebuttal closing, nor does he contend on appeal that the prosecution committed misconduct by making them. Further, defendant did not request redaction of the driving record, did not request the trial court to conduct a Spoto analysis, and did not request a limiting instruction. See Strock, 252 P.3d at 1153 (stating that lack of an objection is a factor that may be considered in examining the impact of the prosecution's argument and may "demonstrate defense counsel's belief that the live argument, despite its appearance in a cold record, was not overly damaging" (quoting Rodriguez, 794 P.2d at 972)).

¶ 89 In addition, the record contains uncontroverted evidence that supports the jury's finding that defendant drove in a reckless manner on the night of the accident. At trial, defendant admitted to drinking alcohol while driving before the collision. Although the jury did not convict defendant of DUI or any DUI-related charges, the jury was free to consider defendant's alcohol consumption when determining whether he drove in a "reckless manner." See Scarlett, 985 P.2d at 41 (holding that defendant's alcohol consumption was relevant to whether he drove recklessly). Moreover, it was uncontested that defendant was speeding at the time of the accident, although the experts gave conflicting opinions on the extent of the speeding. Given this record, we perceive no plain error casting doubt on the reliability of the judgment. See Sepulveda, 65 P.3d at 1006.

¶ 90 Lastly, and contrary to defendant's related contention on appeal, the prosecution's elicitation of testimony from defendant that he had regularly driven while under restraint before the accident did not constitute plain error. The testimony was

relevant to establish defendant's knowledge of revocation, *see Parga*, 964 P.2d at 574, and the prosecution did not use the testimony to establish defendant's propensity to drive with a revoked license, *see* CRE 404(b).

### B. Marijuana Use

¶ 91 Defendant next contends that the court plainly erred by permitting the prosecution to elicit testimony from K.E. that she, defendant, and O.C. were en route to smoke marijuana at the time of the accident. We disagree.

¶ 92 During her direct examination at trial, K.E. testified that defendant came to her house and picked her up: "[W]e were going to just chill and go smoke, and then my cousin had called me and asked me if I could smoke with him, so we planned to go down to Colfax and Sable and smoke with my cousin." Defendant did not object to this testimony, and he did not ask K.E. any questions about it during cross-examination.

¶ 93 On direct examination of defendant, defense counsel and defendant engaged in the following colloquy:

[Defense counsel]: What was the purpose of you going to [K.E.'s] grandma's house?

[Defendant]: I believe I was going to drop [K.E. and O.C.] off there, and I was going to go back to my friend's.

[Defense counsel]: Well, there was prior testimony that—that you all had decided to go smoke marijuana?

[Prosecution]: Objection, leading.

THE COURT: Um, sustained.

[Defense counsel]: Okay. Was it ever an idea of the group to go smoke marijuana?

[Defendant]: Yes, it was.

[Defense counsel]: Okay. And when did— when did that idea happen?

[Defendant]: Um, sometime between—I think right at her house. At her house, when I showed up, she told me her and her girl wanted to basically smoke, that's why she had called me. And so I show up and stuff, and you know, I don't really like, you know, the effects of marijuana. So that's the whole reason we are going to her

grandmother's house, was to, you know, meet up with her cousins.

¶ 94 The prosecution later sought to admit evidence about two instances in which police discovered marijuana in defendant's possession to rebut his testimony that he did not "really like ... the effects of marijuana." The trial court permitted the prosecution to question defendant about the two prior instances, a ruling defendant does not challenge on appeal.

 ¶ 95 On appeal, defendant contends that the court committed plain error by admitting K.E.'s testimony that she, defendant, and O.C. planned to "go smoke" the night of the accident. Specifically, defendant contends that admission of K.E.'s testimony forced him to explain her remarks during his own testimony, which included his comment that he did not "really like, you know, the effects of marijuana," which in turn led the prosecution to question him about his prior experiences with marijuana in an attempt to rebut his comment. However, defendant does not challenge the court's ruling permitting the prosecution to question him about his prior experiences with marijuana, but limits his contention to the admission of K.E.'s testimony.

¶ 96 We conclude that there was no error, much less plain error, in the admission of K.E.'s testimony. K.E.'s testimony was relevant and admissible as res gestae evidence because it provided the fact finder with a fuller and more complete understanding of the surrounding events and context on the night of the accident. *See People v. Griffiths*, 251 P.3d 462, 466 (Colo.App.2010). Moreover, there was only a very brief reference to smoking in K.E.'s testimony, and the prosecution never referred to marijuana use by defendant in closing arguments. Thus, the testimony was not unfairly prejudicial under CRE 403.

¶ 97 Moreover, we note that, although common sense suggests that K.E.'s testimony about their plans to "go smoke" implied that they were planning on smoking marijuana (as opposed to tobacco), K.E. never specifically mentioned the word "marijuana" in her testimony. Rather, defendant, in his testimony, chose to explain K.E.'s comment in an at-

tempt to distance himself from any suspicion of marijuana use. Defendant made the choice to further expand the issue of his marijuana use during the trial, and he cannot complain about that decision on appeal simply because it turned out to be (at least, in his view) a misguided one. Moreover, we fail to discern how admission of K.E.'s testimony "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." *Sepulveda,* 65 P.3d at 1006. Accordingly, we reject defendant's contention.

## VII. Cumulative Error

¶ 98 Finally, because the alleged errors raised by defendant did not, singly or cumulatively, deprive him of a fair trial, he is not entitled to reversal on a theory of cumulative error. *See People v. Knight,* 167 P.3d 147, 157 (Colo.App.2006).

¶ 99 In sum, based on our conclusion that defendant's multiple convictions and sentences for the offense of leaving the scene of an accident violated his constitutional right to be free from double jeopardy, the case is remanded to the trial court with directions to merge defendant's two convictions for leaving the scene of an accident into one, vacate the sentence imposed as to one of these convictions, and correct the mittimus accordingly. In all other respects, the judgment is affirmed.

Judge HAWTHORNE and Judge MILLER concur.