**PROACTIVE TECHNOLOGIES, INC., Plaintiff–Appellant,**

v.

**DENVER PLACE ASSOCIATES LIMITED PARTNERSHIP, Defendant–Appellee.**

No. 04CA2613.

Colorado Court of Appeals, Div. III.

June 29, 2006.

Lathrop & Gage, LLC, Keith P. Ray, Denver, Colorado, for Plaintiff–Appellant.

Robinson Waters & O'Dorisio, P.C., Stephen L. Waters, Kimberly A. Bruetsch, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this case concerning the recovery of consequential damages for the commercially unreasonable sale of collateral, plaintiff, Proactive Technologies, Inc., appeals the trial

court's summary judgment in favor of defendant, Denver Place Associates Limited Partnership. We affirm.

In 1994, Denver Place leased space to Proactive under a commercial lease. In 1995, Proactive defaulted twice on its obligations under the lease, and in November of that year, it entered into a settlement agreement obligating it to make payments to Denver Place, in return for which it could remain in possession of the premises. The agreement provided that Denver Place could lock Proactive out of the leased space and deny it access to the leased space and its equipment if it failed to comply with any of the terms of the agreement or lease.

Denver Place locked Proactive out of its leased space in December 1995 when Proactive was unable to meet the terms set forth in the settlement agreement. In March 1996, Denver Place auctioned Proactive's property, but Proactive alleged that three of its computers and the contents of a lateral file cabinet were not made part of the auction or accounted for.

According to Proactive, two of its computers contained fully functional versions of software used in sales and training presentations by its employees, and the remaining computer contained the only then current electronic version of the software source code, which was necessary for Proactive to customize the software to meet the needs of its customers. Additionally, Proactive claimed that the lateral file cabinet contained the only then current written version of the software source code.

As relevant here, in 1998, Proactive filed an amended complaint against Denver Place, asserting claims for relief related to, inter alia, Denver Place's conduct in the sale of its personal property. Specifically, Proactive asserted that Denver Place breached the Uniform Commercial Code (UCC) by failing to dispose of Proactive's three computers and lateral file cabinet in a "commercially reasonable manner."

In August 2004, Denver Place filed a motion for summary judgment on Proactive's UCC claim, arguing that the computers and file cabinet were not part of the sale. In the alternative, Denver Place argued that, even if Proactive could maintain a claim for failure to dispose of the property in a commercially reasonable manner, it was not entitled to recover consequential damages in the form of lost profits under the UCC.

In September 2004, the trial court denied Denver Place's motion for summary judgment on the ground that retention of collateral for an excessive period of time without disposition may be commercially unreasonable in violation of the UCC and may give rise to a claim for damages, regardless of whether the collateral was part of an auction or sale. Without addressing the measure of damages which might have been available in this case, the trial court then stated that consequential damages were not recoverable under the UCC, Colo. Sess. Laws 1965, ch. 330, § 4–9–507(1) at 1476 (now amended and recodified as § 4–9–625(b), C.R.S.2005), for failure to dispose of collateral in a commercially reasonable manner.

In November 2004, the parties stipulated to an entry of judgment wherein Proactive was found liable to Denver Place for breach of the lease and owed $290,572.34 in damages. Denver Place stipulated to liability on Proactive's claim for breach of the UCC and conceded $13,511.10 in damages. Proactive now appeals part of the trial court's judgment.

Proactive contends that the trial court erred in ruling that it could not recover consequential damages in the form of lost profits under the former § 4–9–507(1) of the UCC for Denver Place's failure to dispose of the three computers and lateral file cabinet in a commercially reasonable manner. We disagree.

Colo. Sess. Laws 1963, ch. 330, § 4–9–504(3) at 1474 (now amended and recodified as § 4–9–610(b), C.R.S.2005), states, in relevant part, that "[d]isposition of the collateral may be by public or private proceedings," but "every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable." The former § 4–9–507(1) stated, in pertinent part:

> If it is established that the secured party is not proceeding in accordance with the provisions of ... this article, disposition may be ordered or restrained on appropriate

terms and conditions. If the disposition has occurred, the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party *any loss* caused by a failure to comply with the provisions of said sections.

(Emphasis added.) *See also Alamosa Nat'l Bank v. San Luis Valley Grain Growers, Inc.,* 756 P.2d 1022 (Colo.App.1988) (if secured party acts in commercially unreasonable manner regarding collateral, debtor has right to recover any resulting loss proved by debtor).

■ When a statute is interpreted, the adjective "any" is generally understood to mean "all." *Winslow v. Morgan County Comm'rs,* 697 P.2d 1141 (Colo.App.1985). "Any" is a term of expansion without restriction or limitation in statutory construction. *In re L.F.,* 56 P.3d 1249 (Colo.App.2002).

However, § 4–1–106(1), C.R.S.2005, states, in relevant part:

The remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed, but *neither consequential or special nor penal damages may be had except as specifically provided in this title or by other rule of law.*

(Emphasis added.) Moreover, the official commentary to § 4–1–106(1) states, in pertinent part: "Subsection (1) is intended to. make it clear that compensatory damages are limited to compensation. They do not include consequential or special damages, or penal damages; and the Act elsewhere makes it clear that damages must be minimized."

Furthermore, the underlying purposes and policies of the UCC are "[t]o *simplify, clarify,* and modernize the law governing commercial transactions"; "[t]o permit the continued expansion of commercial practices through custom, usage, and agreement of the parties"; and "[t]o *make uniform the law* among the various jurisdictions." Section 4–1–102(2)(a)(c), C.R.S.2005 (emphasis added).

Although no Colorado cases discuss whether consequential damages may be awarded under the former § 4–9–507(1), one federal court has held that consequential damages are not available under the UCC for the commercially unreasonable sale of collateral because they are not expressly provided for as a remedy for such an infraction. *Suffield Bank v. LaRoche,* 752 F.Supp. 54 (D.R.I. 1990).

■ In construing a statute, an appellate court must read and consider the statute as a whole and interpret it to give harmonious effect to all its parts. *People v. Novitskiy,* 81 P.3d 1070 (Colo.App.2003). When interpreting a statute, an appellate court must give effect to the General Assembly's intent and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Denver jetCenter, Inc. v. Arapahoe County Bd. of Equalization,* —— P.3d ——, 2006 WL 1028887 (Colo. App. No. 04CA2050, Apr. 20, 2006). An appellate court must also avoid interpretations that render statutory provisions redundant or superfluous. *Wolford v. Pinnacol Assurance,* 107 P.3d 947 (Colo.2005).

■ If the statutory language is clear and unambiguous, the court need not resort to the interpretive rules of statutory construction. *Denver jetCenter v. Arapahoe County Bd. of Equalization, supra.* Where the language of a statute is ambiguous, courts must rely on other factors to aid in interpretation such as legislative history, the consequences of a given construction, and the end to be achieved by the statute. *Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027 (Colo.2006).

Here, the relevant language in the UCC is ambiguous. Whereas the former § 4–9–507(1) states that a debtor can recover "any loss" from a secured party if the latter does not dispose of collateral according to the provisions of the UCC, it does not explain whether those losses may include consequential damages. Although the cases noted above suggest that the term "any loss" would be broad enough to include consequential damages, § 4–1–106(1) states that such damages may only be awarded when specifically provided for. Moreover, the commentary to § 4–1–106(1) makes it clear that damages under the UCC must be minimized.

Therefore, we turn to the consequences of the construction proposed by Proactive, and the end to be achieved by the statute, for assistance in determining whether the General Assembly intended consequential damages to be awarded under the former § 4-9-507(1).

"Consequential damages" are expressly provided for or referred to in numerous sections of the UCC. *See* § 4-2-712, C.R.S.2005 (consequential damages permitted for buyer's rejection of goods and procurement of substitute goods); § 4-2-713, C.R.S.2005 (consequential damages permitted for nondelivery or repudiation of goods); § 4-2.5-518, C.R.S.2005 (consequential damages permitted where substitute goods must be leased); § 4-2.5-419, C.R.S.2005 (consequential damages permitted for nondelivery, repudiation, default, and breach of warranty in regard to accepted goods); § 4-3-411, C.R.S.2005 (consequential damages permitted if bank wrongfully refuses to pay cashier's check or certified check, stops payment on a teller's check, or refuses to pay a dishonored teller's check); § 4-4.5-404, C.R.S.2005 (consequential damages permitted if bank refuses to honor payment order).

These statutes comport with the language in § 4-1-106(1), which states that courts may award consequential damages under the UCC only if they are specifically provided for. The former § 4-9-507(1), however, does not refer to consequential damages, nor does the comment to that section indicate that it includes consequential damages. Therefore, the requirement in § 4-1-106(1) to specify the availability of consequential damages would be vitiated if we were to interpret the term "any loss" in the former § 4-9-507(1) to include consequential damages. Moreover, such an interpretation would render superfluous the numerous provisions of the UCC that expressly provide for consequential damages and the comment to § 4-1-106(1), which states that damages under the UCC should be minimized.

Furthermore, although the word "any" has been interpreted to mean "all" in Colorado, the term "any loss" in the former § 4-9-507(1) is not part of a statutory provision that stands alone. Rather, it is part of a statutory scheme that, as mentioned above, was enacted for the specific purpose of sim-plifying, clarifying, and making uniform the law for commercial transactions. Thus, the expansive and unrestricted interpretation afforded the word "any" in other contexts, which would seemingly allow the term "any loss" in the former § 4-9-507(1) to include consequential damages, is inapposite here because the resulting incongruity would frustrate the intent of the UCC.

Accordingly, the trial court correctly ruled that consequential damages are not recoverable under the former § 4-9-507(1), and therefore, that Proactive was not entitled to damages for alleged lost profits.

The judgment is affirmed.

Judge GRAHAM and Judge FURMAN concur.