24CA1915 Stetson v Poudre Valley 07-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1915
Larimer County District Court No. 24CV30421
Honorable Laurie K. Dean, Judge

Jacqleen Stetson,

Plaintiff-Appellant,

v.

Poudre Valley Health Care, Inc. D/B/A Poudre Valley Health System and
D/B/A UCHealth Mountain Crest Behavioral Health; and
Ashley Barnhart, RN,

Defendants-Appellees.

ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

Law Offices of J.M. Reinan, P.C., Jerome M. Reinan, Jordana Griff Gingrass,
Denver, Colorado, for Plaintiff-Appellant

Caplan and Earnest, L.L.C., W. Stuart Stuller, Laura M. Wassmuth, Travis J.
Miller, Boulder, Colorado, for Defendant-Appellee Poudre Valley Health
Care, Inc.

Childs McCune, LLC, Steven A. Michalek, Corinne C. Miller, Denver, Colorado,
for Defendant-Appellee Ashley Barnhart, RN

¶ 1    Plaintiff, Jacqleen Stetson, appeals the district court's order granting the special motion to dismiss jointly filed by defendants, Ashley Barnhart, RN, and Poudre Valley Health Care, Inc., d/b/a Poudre Valley Health System and d/b/a UCHealth Mountain Crest Behavioral Health (Mountain Crest), under Colorado's anti-SLAPP statute, section 13-20-1101, C.R.S. 2024.  We affirm the court's order and remand the case with directions.

## I.    Background

¶ 2    We take the following facts from Stetson's district court complaint and her opposition to Barnhart and Mountain Crest's joint special motion to dismiss.

¶ 3    In July 2022, Stetson, a nurse practitioner, was admitted to Mountain Crest on an involuntary short-term mental health certification after suffering escalating mental health issues, including extreme paranoia and psychosis with increased agitation. During her second day of treatment at Mountain Crest, Stetson broke off a pointed, four-inch piece of plastic from medical equipment that had been left in her room and used it as a weapon. Mountain Crest staff attempted to physically restrain Stetson, but she managed to push past them and grabbed Barnhart, a nurse at

the facility. Stetson then placed her arm around Barnhart's neck, pulled her toward the exit, and demanded to be released from the facility. Mountain Crest staff eventually separated Stetson from Barnhart, removed the weapon from Stetson's possession, and placed her in a restraint chair.

¶ 4 After consulting with other staff members, Barnhart contacted the police department to report the incident. While making her report, Barnhart said she had felt she was in a "hostage situation," but she also explained that she didn't believe that Stetson had acted purposefully, attributing her behavior to her psychiatric illness. According to Stetson, Barnhart reported the incident to law enforcement based on her "personal belief" that Stetson should no longer be allowed to practice as a nurse practitioner.

¶ 5 Two days later, Mountain Crest discharged Stetson after she showed signs of improvement and was no longer actively psychotic. But as she was leaving the facility, police officers arrested Stetson for her attack on Barnhart. Stetson later came to believe that Mountain Crest staff, including Barnhart, had "arranged" for police officers to arrest Stetson by continuing to communicate with law enforcement after the incident. Mountain Crest staff explained to

the arresting officers that they hadn't informed Stetson about her imminent arrest because they were worried that it would upset her and make her "unmanageable."

¶ 6    Stetson was charged with multiple crimes arising out of her attack on Barnhart.  She ultimately pleaded guilty to a lesser charge — third degree assault — in lieu of proceeding to trial.

¶ 7    Stetson later filed a civil complaint and jury demand against Mountain Crest and Barnhart, alleging claims for extreme and outrageous conduct, breach of fiduciary duty, and civil conspiracy.[1] Mountain Crest and Barnhart filed a joint special motion to dismiss these claims under Colorado's anti-SLAPP statute.  After holding oral argument, the district court granted Barnhart and Mountain Crest's special motion to dismiss in a detailed written order.  As relevant to this appeal, the court determined that (1) Stetson's claims arose from acts in furtherance of Barnhart's and Mountain

---

[1] Stetson also filed (1) an abuse of process claim against both Barnhart and Mountain Crest, which she later withdrew; and (2) a negligence claim against Mountain Crest only.  Mountain Crest answered the negligence claim, which is currently stayed pending resolution of this interlocutory appeal.

Crest's protected rights to free speech and (2) Stetson hadn't shown a reasonable likelihood of success on her claims.

¶ 8    Stetson appeals the district court's dismissal order under section 13-20-1101(7).

## II.    Discussion

¶ 9    Stetson contends that the district court erred by determining that (1) Barnhart's initial call to the police constituted free speech concerning an important public issue; (2) Barnhart's and Mountain Crest's post-call conduct was related to Barnhart's initial call and therefore immunized from civil liability; and (3) Stetson hadn't shown a reasonable likelihood of prevailing on her claims. We review each contention in turn.

### A.    Applicable Law and Standard of Review

¶ 10    The anti-SLAPP statute's purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b).

¶ 11     The statute balances these rights by providing a mechanism for weeding out, at an early stage, nonmeritorious lawsuits brought in response to a person's petitioning or speech activities. *Tender Care Veterinary Ctr., Inc. v. Lind-Barnett*, 2023 COA 114, ¶ 12 (*cert. granted in part* Sept. 3, 2024). A party, typically a defendant, may file a special motion to dismiss a cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue." § 13-20-1101(3)(a); *see Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶¶ 15-18 (describing a special motion to dismiss under the anti-SLAPP statute). But if the plaintiff establishes a "reasonable likelihood" that they will prevail on the claim, then the court must deny the special motion to dismiss. § 13-20-1101(3)(a).

¶ 12     Given this statutory framework, the resolution of a special motion to dismiss follows a two-step process. *Tender Care Veterinary Ctr.*, ¶ 13. First, the defendant bears the burden of showing that the conduct underlying the plaintiff's claims arises from the defendant's exercise of their right of petition or free speech. *Id.* If the defendant fails to satisfy their step-one burden,

5

the court must deny the special motion to dismiss. *Id.* at ¶ 14. But if the defendant satisfies this burden, the analysis proceeds to the second step. *Id.* At the second step, the burden shifts to the plaintiff to establish a reasonable likelihood of prevailing on the claim. *Id.* If the plaintiff fails to make such a showing, the court must grant the special motion to dismiss.[2] *Id.*

¶ 13 We review an order granting or denying a special motion to dismiss de novo, applying the same two-part test as the district court. *Coomer v. Salem Media of Colo., Inc.*, 2025 COA 2, ¶ 16.

¶ 14 With these principles in mind, we turn to Stetson's contentions.

---

[2] Divisions of this court have lacked consensus on whether to treat the plaintiff's proffered evidence as true at the second step. *See Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4, ¶¶ 62-63 (Berger, J., specially concurring) (discussing the inconsistent holdings in *Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 21, and *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 23); *Coomer v. Salem Media of Colorado, Inc.*, 2025 COA 2, ¶ 120 (Tow, J., specially concurring) (same). We need not resolve this question because, even giving Stetson the benefit of accepting her evidence as true, we conclude for the reasons below that she has failed to satisfy her step-two burden.

### B. Analysis

#### 1. Step One

¶ 15 Under step one, we first address Barnhart's initial call to law enforcement authorities before turning to Barnhart's and Mountain Crest's post-call conduct.

##### a. Barnhart's Initial Report to Law Enforcement

¶ 16 The anti-SLAPP statute protects, as relevant here, "[a]ny written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law." § 13-20-1101(2)(a)(I). This provision encompasses communications that are preparatory to or in anticipation of commencing official proceedings, including statements meant to prompt action by law enforcement agencies. *L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 28. Barnhart's initial call to law enforcement was clearly intended to prompt action by the police, rendering it protected speech.

¶ 17 We aren't persuaded otherwise by Stetson's argument that Barnhart's report to law enforcement was "fraudulent and untruthful." According to Stetson, Barnhart, a psychiatric nurse, "knew" that Stetson was suffering from psychosis at the time and

7

was therefore "incapable" of distinguishing right from wrong. But a plaintiff's mere allegation that the defendant's otherwise-protected statement is false doesn't prevent the defendant from satisfying step one. *Id.* at ¶ 31. Were that the case, a plaintiff could evade the purposes of the anti-SLAPP statute simply by alleging falsity. *Id.* As a result, a defendant is precluded from using the anti-SLAPP statute to dismiss a plaintiff's action only when the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law. *Id.* at ¶ 30. When the plaintiff's allegations of making a false report are controverted, they are insufficient to render the alleged conduct unlawful as a matter of law. *Id.*

¶ 18　　In this case, Barnhart vigorously disputed Stetson's allegations that she knowingly submitted a false report to police. And Stetson's guilty plea to third degree assault confirms, at minimum, that Barnhart's report wasn't "conclusively" fraudulent or untruthful. *Id.*

¶ 19　　Stetson additionally argues that Barnhart's report fell outside the anti-SLAPP statute's protection because it violated (1) certain federal and state privacy laws and (2) Colorado's prohibition on

discriminating against persons who have received an evaluation or treatment for a mental health disorder, section 27-65-117, C.R.S. 2024.

¶ 20   We reject the first of these contentions because whether Barnhart unlawfully disclosed confidential or privileged information is "irrelevant" at step one of the anti-SLAPP inquiry. *Moreau v. U.S. Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1136 (D. Colo. 2022) (citing *Fox Searchlight Pictures, Inc. v. Paladino*, 106 Cal. Rptr. 2d 906, 918 (Ct. App. 2001)).

¶ 21   As to the second contention, Stetson asserts that Barnhart violated section 27-65-117 by discriminating against her based on her occupation as a nurse practitioner, alleging that Barnhart didn't make similar criminal complaints against previous patients who also assaulted her. But section 27-65-117 doesn't protect Stetson's position as a nurse practitioner. Rather, it prohibits only discrimination against individuals who have received an evaluation or treatment for a mental health disorder. Thus, even accepting Stetson's allegations as true, the anti-discrimination provision in section 27-65-117 doesn't support Stetson's argument.

¶ 22    Accordingly, we agree with the district court that Barnhart satisfied step one as it pertains to her initial report to law enforcement authorities.

b.    Barnhart's and Mountain Crest's Post-Call Conduct

¶ 23    We reach the same conclusion with respect to Barnhart's and Mountain Crest's post-call conduct. Stetson argues that Barnhart and Mountain Crest staff continued to communicate with law enforcement authorities after Barnhart's initial call, thus facilitating her eventual arrest after she was discharged. But the anti-SLAPP statute protects "*any* act . . . in furtherance" of a person's right of petition or free speech. § 13-20-1101(3)(a) (emphasis added). Given the statute's expansive scope, we perceive no reason why these post-call communications with law enforcement should receive any less protection than Barnhart's initial report. *See Proactive Techs., Inc. v. Denver Place Assocs. Ltd. P'ship,* 141 P.3d 959, 961 (Colo. App. 2006) (the adjective "any" generally means "all" and is a "term of expansion without restriction or limitation").

¶ 24    Stetson also argues that Barnhart and Mountain Crest withheld information from her related to the ongoing criminal investigation, going so far as to perpetuate the "ruse" that she

would be discharged home to her husband. In Stetson's view, Barnhart's and Mountain Crest's concealment of the truth was wholly unrelated to the initial law enforcement report and therefore unprotected.

¶ 25    Even assuming that Barnhart's and Mountain Crest's alleged concealment of information wasn't "in furtherance" of their protected communications with law enforcement, § 13-20-1101(3)(a), we still discern no basis to reverse. Under step one of the anti-SLAPP analysis, a plaintiff can't survive a special motion to dismiss "simply by 'combining allegations' of protected and nonprotected activity 'under the label of one cause of action.'" *Moreau*, 641 F. Supp. 3d at 1137 (quoting *Fox*, 106 Cal. Rptr. 2d at 918). Instead, when a claim is based on a mixture of "allegedly protected and unprotected activity under the anti-SLAPP statute," *id.* at 1135, the court must examine the "principal thrust or gravamen" of the plaintiff's claim. *Id.* (quoting *Freeman v. Schack*, 64 Cal. Rptr. 3d 867, 873 (Ct. App. 2007)). Unless the allegedly protected activity is "'merely incidental' to the unprotected conduct," the court may still determine that the defendant has satisfied their step-one burden as to the "mixed" claim and proceed

11

to step two.  *Id.* (quoting *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures*, 110 Cal. Rptr. 3d 129, 139 (Ct. App. 2010)).

¶ 26    We agree with the district court that the principal thrust or gravamen of each of Stetson's claims centered around Barnhart's and Mountain Crest's protected communications with law enforcement.  In her intentional infliction of emotional distress and breach of fiduciary duty claims, Stetson alleged that Barnhart and Mountain Crest caused her to be prosecuted and criminally punished, abused their power over her, caused her medical information to be exposed, favored Barnhart's desire to prevent Stetson from practicing her profession, failed to keep Stetson safe, and intentionally traumatized her by discharging her into police custody rather than to her husband.  In her civil conspiracy claim, Stetson similarly alleged that Barnhart's coworkers encouraged Barnhart to (1) abuse her power over Stetson; (2) contact law enforcement; (3) make a "paper trail"; and (4) follow through on her plan to deprive Stetson of her career.

¶ 27    Although the specific details vary, the principal thrust or gravamen of each of these claims is that Barnhart and Mountain

Crest allegedly breached various duties owed to Stetson by communicating with law enforcement without her knowledge and then discharging her into police custody. Barnhart's and Mountain Crest's protected communications with law enforcement are integral to each of these claims. Indeed, Barnhart's and Mountain Crest's alleged concealment of information regarding the police investigation couldn't have occurred if Barnhart hadn't contacted law enforcement in the first place. As a result, Barnhart's and Mountain Crest's protected communications with law enforcement weren't "merely incidental" to the unprotected conduct alleged in Stetson's complaint. *Moreau*, 641 F. Supp. 3d at 1135 (citation omitted).

¶ 28 Accordingly, we conclude that Barnhart and Mountain Crest satisfied their step-one burden as to their post-call conduct.

## 2. Step Two

¶ 29 Turning to step two of the anti-SLAPP statute's analysis, we conclude as a matter of law that Stetson failed to satisfy her burden of establishing a reasonable likelihood of prevailing on her claims. We base this conclusion on the broad civil immunity afforded to those who report alleged crimes to law enforcement authorities.

13

¶ 30    In Colorado, any person or corporation who has "reasonable grounds" to believe that a crime has been committed has a duty "to report promptly the suspected crime to law enforcement authorities." § 18-8-115, C.R.S. 2024. "When acting in good faith, such corporation or person shall be immune from any civil liability for such reporting or disclosure." *Id.*; *see also* § 16-3-202(4), C.R.S. 2024 ("Private citizens, acting in good faith, shall be immune from any civil liability for reporting to any police officer or law enforcement authority the commission or suspected commission of any crime or for giving other information to aid in the prevention of any crime.").

¶ 31    Barnhart's and Mountain Crest's communications with law enforcement fell squarely within the civil immunity provided by section 18-8-115. All agree that Stetson placed her arm across Barnhart's neck and wielded a sharp piece of plastic as a weapon to bargain for her release from the facility. Barnhart and Mountain Crest therefore had "reasonable grounds" to believe that Stetson had committed a crime. § 18-8-115. Indeed, Stetson later pleaded guilty to third degree assault. *See* § 18-3-204, C.R.S. 2024.

14

¶ 32    Similar to her step-one argument, Stetson nonetheless argues that Barnhart and Mountain Crest lacked a good faith belief that Stetson was criminally culpable based on their awareness of her psychosis and resulting inability to form the requisite mental state. But nothing in section 18-8-115 required either Barnhart or Mountain Crest to investigate or confirm Stetson's mental state before reporting Stetson's attack to authorities.  The statute requires only that the reporter have "reasonable grounds" to believe that a crime has been committed.  § 18-8-115.  Stetson's wielding of a weapon against Barnhart provided more than ample grounds to report her to law enforcement authorities.

¶ 33    Moreover, contrary to Stetson's implicit argument, a victim's report to law enforcement authorities doesn't lose its protected status simply because the victim is aware, or suspects, that the alleged assailant is incapable of distinguishing between right and wrong.  Victims aren't expected to know or evaluate the precise legal consequences that flow from an assailant's impaired mental state. That task falls to investigators, prosecutors, defense attorneys, and, ultimately, the fact finder at trial.  *See Lunsford v. W. States Life Ins.*, 919 P.2d 899, 901 (Colo. App. 1996) (Section 18-8-115 doesn't

15

require "the degree of certainty on the part of the citizen reporting the commission of a crime as does the probable cause standard that police officers are held to in making warrantless arrests.").

¶ 34 Thus, based on the broad civil immunity afforded to Barnhart and Mountain Crest under section 18-8-115, we conclude as a matter of law that Stetson didn't satisfy her step-two burden of showing a reasonable likelihood of prevailing on her claims.

¶ 35 We aren't convinced otherwise by Stetson's remaining step-two arguments. Stetson again emphasizes that Barnhart and Mountain Crest concealed their communications with law enforcement from her and conspired to discharge her into police custody. But Stetson cites no authority that requires an individual who reports a crime, either generally or specifically within the behavioral health field, to inform the assailant that their alleged crime has been reported to law enforcement authorities. In our view, imposing such a requirement would undermine section 18-8-115's underlying crime-reporting goals by affording the assailant an opportunity to flee or conceal evidence of their wrongdoing.

¶ 36 Nor are we persuaded that Stetson is reasonably likely to prevail based on Barnhart's and Mountain Crest's alleged violations

of certain federal and state privacy laws.  *See* 45 C.F.R. § 164.512 (2024); 42 C.F.R. § 2.12 (2024); §§ 27-65-119(1)(n), 27-65-123(1), C.R.S. 2024.  The privacy laws relied on by Stetson carve out exceptions from their confidentiality provisions for reports of criminal conduct made to law enforcement.  Under a regulation promulgated under the Health Insurance Portability and Accountability Act of 1996, for example, a covered entity "may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity."[3]  45 C.F.R. § 164.512(f)(5); *see also* 42 C.F.R. § 2.12(c)(5) (similar exception for substance use disorder patient records).

¶ 37      Similarly, with exceptions not pertinent here, information regarding a patient's mental health disorder isn't treated as privileged or confidential under Colorado law if it concerns (1) "observed behavior that constitutes a criminal offense committed upon the premises of any facility providing services" for a mental

---

[3] Although the regulation limits this exception to reports made by a covered entity operating in good faith, we have already rejected Stetson's argument that Barnhart and Mountain Crest lacked good faith when reporting to law enforcement.

17

health disorder; or (2) "any criminal offense committed against any person while performing or receiving services" for a mental health disorder.  § 27-65-123(3)(a).

¶ 38     Barnhart's and Mountain Crest's communications with law enforcement fit comfortably within these exceptions.  Thus, the privacy laws cited by Stetson don't support her argument that she is reasonably likely to prevail on her claims.

¶ 39     Accordingly, Stetson failed to meet her step-two burden of establishing a reasonable likelihood of prevailing on her claims.  Given our conclusion, we perceive no error in the district court's decision granting Barnhart and Mountain Crest's special motion to dismiss.

### III.   Appellate Attorney Fees and Costs

¶ 40     Barnhart and Mountain Crest jointly request their reasonable attorney fees and costs incurred on appeal.  "[A] prevailing defendant on a special motion to dismiss is entitled to recover the defendant's attorney fees and costs."  § 13-20-1101(4)(a).  Because Barnhart and Mountain Crest have prevailed on appeal, we grant their request.  *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 54.  Exercising our discretion under C.A.R. 39.1, we remand

the case to the district court to determine the amount of their reasonable appellate attorney fees and costs.

## IV.   Disposition

¶ 41    We affirm the district court's order granting Barnhart and Mountain Crest's special motion to dismiss and remand the case to the district court to determine the amount of Barnhart's and Mountain Crest's reasonable appellate attorney fees and costs.

JUDGE TOW and JUDGE YUN concur.